16

Henry et al., Appellees, *v.* Central National Bank, Exr., et al.; Thomas et al., Appellants.

Henry et al., Appellees, *v.* Central National Bank, Exr., Appellant, et al.

Henry et al., Appellees, *v.* Central National Bank, Exr. et al.; National Bank & Trust Co. of Central Pennsylvania, Exr., et al., Appellants.

(Nos. 68-154, 68-163 and 68-164—Decided November 20, 1968.)

*Mr. Edward I. Stillman,* for appellees.

*Messrs. Lawrence, Bates & Carlisle,* for appellants in case No. 68-154.

*Messrs. Sayre, Vail, Steele & Renkert,* for appellant in case No. 68-163.

*Mr. Henry A. Hawgood,* for appellants in case No. 68-164.

HERBERT, J. These causes require the interpretation and construction of certain inconsistent and conflicting language found in statutes enacted at the same session of the General Assembly. The facts are undisputed.

Alberta C. Hutchison died on January 22, 1965, leaving no surviving spouse or issue. By last will and testament she bequeathed and devised her entire estate to her brother, Daniel P. Casement, who died testate on January 28, 1965, six days after the death of the decedent Alberta Hutchison, leaving his entire estate to Mrs. Carroll C. Henry, a plaintiff in these actions. Plaintiff Mrs. Carroll C. Henry claims that as devisee of the entire estate of Daniel C. Casement, she is entitled to all of the estate of Alberta C. Hutchison, by reason of Section 2105.21, Revised Code (formerly Section 10503-18 of the General Code) enacted by the 100th General Assembly (1953 and 1954) in House Bill No. 1 (Re-

codification Act) and corrected in Section 2105.21, as enacted in Senate Bill No. 361—known also as the Omnibus Bill. This section reads in part:

"Sec. 2105.21 (10503-18) * * * When the surviving spouse or other heir at law or legatee dies within three days after the death of the decedent, or within thirty days after the death of such decedent *if such death resulted from a common accident*, the estate of such first decedent shall pass and descend as though he had survived such heir at law or legatee. This section shall prevail over the right of election of a surviving spouse.

"* * *

"Repeal.

"Section 2. That existing sections * * * 2105.21 * * * of the Revised Code, as enacted in H. B. No. 1 of the 100th General Assembly, are hereby repealed.

"Emergency.

"Section 3. This act is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health and safety. The reason for such necessity lies in the fact that these *corrective amendments* to the Revised Code must take effect at the same time the Revised Code goes into effect. Therefore, this act shall take effect October 1, 1953." (Emphasis added.)

The bill was passed August 7, 1953, and approved by the Governor on August 12, 1953.*

The defendants, who claim to be the heirs-at-law of Alberta C. Hutchison rely upon Section 2105.21, Revised Code, as enacted in Amended Senate Bill No. 40 (125 Laws of Ohio 411), which reads:

---

*Whether the General Assembly had the power to enact an emergency measure on August 7, 1953, but withhold its effectiveness until October 1, 1953, may be subject to some doubt, when read in the light of *Euclid* v. *Heaton*, 15 Ohio St. 2d 65, and the provision in Section 1d, Article II of the Ohio Constitution, which, in its pertinent part, provides that: "* * * emergency laws necessary for the immediate preservation of the public peace, health or safety, *shall go into immediate effect*." (Emphasis added.)

"Be it enacted by the General Assembly of the state of Ohio:

"Section 1. That Sections 2105.21 * * * of the Revised Code be amended and * * * enacted to read as follows:

"Presumption of order of death.

"Sec. 2105.21 (10503-18) * * * When the surviving spouse or other heir at law, legatee or devisee, dies within thirty days after the death of the decedent, the estate of such first decedent shall pass and descend as though he had survived such surviving spouse, or other heir at law, legatee or devisee. A beneficiary of a testamentary trust shall not be deemed to be a legatee or devisee within the meaning of this section. This section shall prevail over the right of election of a surviving spouse.

"This section shall not apply in case of wills wherein provision has been made for distribution of property different from the provisions of this section. In such case such provision of the will shall not prevail over the right of election of a surviving spouse.
"* * *

"Repeal.

"Section 2. That existing Sections 2105.21 * * * of the Revised Code are hereby repealed."

This bill was passed on July 9, 1953, was approved by the Governor on July 17, 1953, and became effective under the provisions of the Constitution on the 16th day of October 1953.

Demurrers to the petition, as well as other pleadings, were filed. The Court of Common Pleas overruled the demurrers, and entered judgment that Section 2105.21, as enacted in House Bill No. 361, was controlling and that the estate of Alberta C. Hutchison passed to the estate of Daniel P. Casement. The Court of Appeals affirmed this judgment. The cause is before this court, upon separate appeals, for final determination.

The answer to the question presented in the case at bar may be found by ascertaining the intention of the Gen-

eral Assembly, as disclosed by the language used in the statutes here under consideration in view of all . of the surrounding circumstances.

*State, ex rel. Francis,* v. *Sours,* 143 Ohio St. 120, at page 124, states this principle:

"The polestar of construction and interpretation of statutory language is legislative intention. In determining that intention courts look to language employed and *to the purpose to be accomplished."* (Emphasis added.)

*State, ex rel. Shaker Heights Public Library,* v. *Main,* 83 Ohio App. 415, has the following to say in the first paragraph of the syllabus:

"The primary purpose of the judiciary in the interpretation or construction of statutes is to give effect to the intention of the Legislature, as gathered from the provisions enacted, by the application of well settled rules of interpretation; the ultimate function being to ascertain the *legislative will."* (Emphasis added.)

In Opinion No. 3506, Opinions of Attorney General (1954), 50, at page 52, Justice O'Neill, then Attorney General, ruled as follows:

"Ordinarily, a statute later in time of passage will control over a statute containing inconsistent or repugnant language and which is earlier in time of passage. * * *

"This, however, is not always true. *The polestar of all attempts at legislative interpretation is the determination of actual legislative intent.* True, the plain language of the statute cannot be so changed by interpretation as to create an ambiguity when none otherwise would exist, but where an ambiguity does exist, based upon actual language employed, resort may be had to a variety of tests, including legislative history, in order to resolve such ambiguity." (Emphasis added.)

The problem here is a seeming conflict in the language used in the two statutes. The same principle—the determination of the legislative intent—would be equally controlling, as in instances of ambiguity in language. The construction of acts passed at the same session of the

General Assembly containing conflicting provisions was before the Supreme Court of Illinois in the case of *S. Buchsbaum & Co.* v. *Gordon*, 389 Ill. 493, 59 N. E. 2d 832, where the court, in the third paragraph of the syllabus, said:

"Where acts are passed at the same session of the Legislature and contain conflicting provisions, the whole record of the legislation will be examined in order to ascertain the legislative intent, which, if ascertained, must be given effect, regardless of priority of enactment."

In the opinion, at page 504, the court said:

"The rule that where two conflicting enactments are passed at the same session, the latest enactment in point of time will prevail, as well as all other rules of construction dealing with repeals by implication, are mere canons of construction. Such canons are only aids to the ascertainment of the *legislative intent* and must yield to such *intent* if the same be otherwise. They should never be followed to the extent of defeating or overriding *the definite intent of the Legislature*." (Emphasis added.)

The "definite intent" of the 100th General Assembly, in respect to the conflicting sections of the Revised Code here under consideration, becomes apparent when the background of the tremendous log jam of legislation confronting the 100th General Assembly, and the procedure adopted to solve this unprecedented legislative situation is studied. In short, the record of the General Assembly must be closely scrutinized to determine its intent with respect to the problems presented by the circumstances and surrounding conditions.

The General Assembly faced two extremely heavy legislative responsibilities. (1) The enactment of a new Revised Code of laws for Ohio. (2) Formulate the procedure to be followed in the disposition of a vast amount of substantive legislation certain to be introduced in the newly convened General Assembly.

The Bureau of Code Revision was created by a previous General Assembly. This bureau worked diligently

for a number of years to provide Ohio with a new code renumbering, rearranging and recodifying the former General Code sections, without commingling or proposing any new substantive law in the revision. In brief, the bureau was required to formulate a new Revised Code which would faithfully reflect the provisions of the General Code without the addition of any new substantive law.

The Bureau of Code Revision prepared a new Revised Code, which was submitted to the General Assembly in a voluminous report known as H. B. No. 1. The bureau had performed a monumental task. But there was left for the General Assembly possibly a still greater and more difficult task—that of perfecting legislation to incorporate this new Revised Code into the law of Ohio, preserving the integrity of the former General Code, while eliminating obsolete sections, and correcting errors in the proposed H. B. No. 1.

Both the General Assembly and the Bureau of Code Revision were adamant in their conclusion that there be no new substantive law permitted in the Revised Code *at its adoption*. The introduction and consideration of proposed new substantive law, if enacted, would become an amendment to the new Revised Code.

The position of the bureau is well-stated in its letter of transmittal of its proposals to the General Assembly, which, in its pertinent part, reads:

"Every safeguard has been taken to prevent any *substantive changes* in the law * * * *the Revised Code must be adopted* as law in its entirety *without any change or amendments* other than corrections of form. If this is not done, the purpose of the entire plan and procedure of revision will be defeated. Any suggested *substantive changes of the law* at the time of its presentation will jeopardize the *entire purpose of the revision* and result in needless controversy over substantive issues. *It is submitted that after its adoption,* the Revised Code can be amended and new legislation enacted to change its content at any time * * *." (Emphasis added.)

The intent of the General Assembly is clearly expressed in House Joint Resolution No. 7, creating a special recodification committee, which, in part, reads:

"It is the intent of this General Assembly, and it is of the utmost importance to the people of this state, that in the enactment of H. B. 1 *no change of substance be made in the revision of the General Code* * * *." (Emphasis added.)

The resolution continues in this language:

"The question of the passage of H. B. 1 will be before this General Assembly *prior to the consideration of bills of a substantive nature* and of necessity delay the other business of the session until finally disposed of * * *." (Emphasis added.)

The joint recodification committee held hearings and completed its study of all the Code sections, and then prepared and introduced S. B. No. 361, also known as the Omnibus Bill, which corrected some 300 errors in H. B. No. 1. S. B. No. 361 corrected and inadvertent omission in Section 2105.21, formerly Section 10503-18 of the General Code. Section 2105.21 of the Revised Code appears in S. B. No. 361 in the same language as in the former section of the General Code.

S. B. No. 40 became effective October 16, 1953, a date later than the effective date of the adoption of the Revised Code, which was October 1, 1953.

Section 2105.21 of the Revised Code, as enacted in Amended S. B. No. 40, is a radical departure from the provisions of the same section as enacted in S. B. No. 361. It eliminates the three-day presumption entirely and establishes a 30-day presumption. It eliminates the "common accident" provision of the S. B. No. 361 version of Section 2105.21 and removes testamentary trusts from the control of the section.

It was clearly the intention of the General Assembly to restate, in the Revised Code, as enacted in H. B. No. 1 and S. B. No. 361, the language of former Section 10503-18 of the General Code without any suggestion of a sub-

stantive change in the law. It was likewise the expressed intention of the General Assembly that any section of the Revised Code, *after its adoption*, was subject to repeal and amendment by the General Assembly.

This was precisely what the General Assembly did when it enacted Amended S. B. No. 40. It repealed Section 2105.21 of the Revised Code and re-enacted it under the same section number, with substantive changes and additions.

Consequently, Section 2105.21 of the Revised Code, as enacted in Amended S. B. No. 40, is controlling in the case at bar. Daniel P. Casement, having died within 30 days after the death of Alberta C. Hutchison, the presumption is that she survived him and that, therefore, her estate should be distributed among her heirs-at-law.

It follows that the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

ZIMMERMAN, MATTHIAS, O'NEILL and BROWN, JJ., concur.

TAFT, C. J., and SCHNEIDER, J., concur in the fourth paragraph of the syllabus and in the judgment.