BELINKY, Appellant,

v.

DRAKE CENTER, INC. et al., Appellees.

[Cite as *Belinky v. Drake Ctr., Inc.* (1996), 117 Ohio App.3d 497.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960138.

Decided Dec. 31, 1996:

500

*DeCenso, Weber & Knapp Co., L.P.A.*, and *William C. Knapp*, for appellant.

*Kohnen & Patton, W. Andrew Patton* and *Anthony J. Caruso*, for appellee Drake Center, Inc.

*Brown, Cummins & Brown Co., L.P.A., Robert S. Brown* and *Kathryn K. Przwara*, for appellee Kindra Shearer.

PAINTER, Judge.

## I. Facts

In 1994, Diane Belinky suffered a stroke which rendered her incompetent. Soon after, she was admitted to the Drake Center ("Drake"), a long-term care facility and nursing home, where she remains a patient. Her husband, Barry Belinky, visited daily. Drake's daily visiting hours were from 11:00 a.m. to 8:30 p.m. Following a conversation with a nurse at Drake, during which he learned of the possibility of staying overnight with his wife, Mr. Belinky requested overnight visitation. After several weeks passed, Kendra Shearer, the vice president of nursing at Drake, wrote to Mr. Belinky that she could not grant visitation privileges outside the administrative policy because of "the complex legal environment in which we exist."

After further attempts to obtain overnight visitation, Mr. Belinky was told that Drake had to protect the rights of its patients and that if he were to molest his wife, she might later regain her competence and sue Drake. Attempting to refute that such an event was possible, Mr. Belinky had his daughters, mother-in-law, and family psychologist, Dr. Jill Bley, write letters to Shearer explaining that Mr. Belinky wanted only to comfort his wife at night and had no expectation of sexual intimacy. In response to Bley's letter, Shearer wrote, "I can assure you that based on Mr. Belinky's request for privacy, I had legal counsel research Drake Center's obligation to protect it's [*sic*] client and it's [*sic*] obligation to accommodate privacy between married adults. Case law in this area is very clear: any type of sexual relations in the absence of consent is rape. It is our duty to inform the patient's family of this policy and we have done so. Drake Center will not accommodate privacy in the absence of a request by a competent patient."

Mr. Belinky obtained legal counsel, who wrote to Drake's counsel concerning overnight visitation. Drake's counsel stated that no exception to the visitation hours would be made.

Mr. Belinky then sought a permanent injunction to require Drake to provide him visitation outside scheduled visiting hours. The suit also asked for actual and punitive damages for violation of R.C. Chapter 3721, which contains numerous rights for nursing home patients, defamation, and intentional infliction of emotional distress. The parties subsequently reached a settlement on the visitation issue, but not on Mr. Belinky's claims for damages for the period of deprivation, some ten months. The trial court granted the defendants' motion for summary judgment on the remaining issues and denied Mr. Belinky's motion for partial summary judgment.

## II. The Nursing Home Patients' Bill of Rights

R.C. Chapter 3721 contains provisions for protecting the rights of patients and residents at nursing homes, a quickly growing segment of Ohio's population. R.C. 3721.10 through 3721.17 provide specific rights to nursing home patients and residents, such as the right to certain living conditions and the right to adequate medical treatment. These provisions are referred to as the "nursing home patients' bill of rights."

Mr. Belinky, in his individual capacity and as sponsor for Mrs. Belinky under R.C. 3721.10(D), brings a single assignment of error, claiming that the trial court erred in granting defendants-appellees' motion for summary judgment on all issues and denying his motion for partial summary judgment for violation of a specific provision of R.C. Chapter 3721.

An appellate court's review of a summary judgment is *de novo. Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212; *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 641 N.E.2d 265. A motion for summary judgment is properly granted if the court, upon viewing the evidence in a light most favorable to the party against whom the motion is made, determines that (1) there is no genuine issue as to any material fact, (2) the movant is entitled to a judgment as a matter of law, and (3) the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 639 N.E.2d 1189; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

Before examining the claims, we first decide that Mr. Belinky does not have standing in his individual capacity to sue for a violation of R.C. Chapter 3721, because it provides protections only for *residents* of nursing homes. Mr. Belinky is not a resident of the home and therefore does not have standing to sue under R.C. Chapter 3721 for any violations of the statute. However, Mr. Belinky qualifies as a sponsor for Mrs. Belinky. R.C. 3721.10(D) provides that a sponsor is "an adult relative, friend, or guardian of a [nursing home] resident who has an

interest or responsibility in the resident's welfare." As her husband, Mr. Belinky obviously qualifies as Mrs. Belinky's sponsor. Thus, Mr. Belinky, as a sponsor for Mrs. Belinky, has standing to sue Shearer and Drake for a violation of R.C. Chapter 3721.

In the first issue presented for review, Mr. Belinky as sponsor asserts that Shearer and Drake violated R.C. Chapter 3721 and Ohio Adm.Code 3701–17–10 by denying him overnight visitation at the nursing home. R.C. 3721.17(I) states that "[a]ny resident whose rights under sections 3721.10 to 3721.17 of the Revised Code are violated has a cause of action against any person or home committing the violation. The action may be commenced by the resident or by his sponsor on his behalf. The court may award actual and punitive damages for violation of the rights."

At issue is R.C. 3721.13(A)(21), which gives nursing home residents the right to private communications with any person (unless not medically advisable), including private visits at any reasonable hour. Thus, this dispute focuses on whether a nonresident spouse's overnight visitation is considered visitation at a reasonable hour. If such overnight visitation is at a reasonable hour, the resident has a cause of action for a violation of this right. Unfortunately, the statute does not further define "any reasonable hour" for visitation, and research has revealed no case law on the subject.

The primary function of the judiciary in interpreting statutes is to ascertain the legislative will. *Henry v. Cent. Natl. Bank* (1968), 16 Ohio St.2d 16, 45 O.O.2d 262, 242 N.E.2d 342, paragraph two of the syllabus. When a statute is subject to various interpretations, the court invokes rules of statutory construction to give effect to the legislature's intent. *State v. S.R.* (1992), 63 Ohio St.3d 590, 594, 589 N.E.2d 1319, 1323, citing *Featzka v. Millcraft Paper Co.* (1980), 62 Ohio St.2d 245, 247, 16 O.O.3d 280, 281–282, 405 N.E.2d 264, 266. If the construction and interpretation of statutory language reveals the statute to be facially ambiguous, the function of the courts is to construe statutory language to effect a just and reasonable result. *Gulf Oil Corp. v. Kosydar* (1975), 44 Ohio St.2d 208, 73 O.O.2d 507, 339 N.E.2d 820, paragraph two of the syllabus; *Starcher v. Logsdon* (1981), 66 Ohio St.2d 57, 20 O.O.3d 45, 419 N.E.2d 1089.

Although we have no guidance concerning reasonable hours from the statute or case law, Ohio Adm.Code 3701–17–10, entitled "Visiting hours," was issued by the Public Health Council. R.C. 3721.04 grants the Public Health Council, a body of the Ohio Department of Health, authority to adopt and publish rules governing the operation of nursing homes. Ohio Adm.Code 3701–17–10 states: "All nursing homes shall provide daily visiting hours whereby persons may visit patients or residents. One member of a patient's or resident's immediate family, his guardian, physician, or spiritual advisor may visit the patient or resident *at any*

*time;* provided, however, the operator may make reasonable rules to insure that such visit will not unduly disturb other patients or residents or interfere with the operation of the home." (Emphasis added.)

■ As a sponsor, Mr. Belinky claims that Ohio Adm.Code 3701–17–10 creates two classes of people, a small, closely connected group who may visit the patient at any time, and everyone else, who may visit only *during* scheduled visiting hours. We agree. Otherwise, the language "may visit at any time" would be contradictory. The regulation's plain meaning is that these people may visit at times in addition to the regular visiting hours.

■ "If reasonably possible, the statutes and administrative regulations of Ohio must be harmonized, reconciled, and construed together." *State ex rel. Cuyahoga Cty. Hosp. v. Ohio Bur. of Workers' Comp.* (1986), 27 Ohio St.3d 25, 27, 27 OBR 442, 443, 500 N.E.2d 1370, 1372, citing *State ex rel. McGraw v. Gorman* (1985), 17 Ohio St.3d 147, 17 OBR 350, 478 N.E.2d 770, and *Wooster Republican Printing Co. v. Wooster* (1978), 56 Ohio St.2d 126, 10 O.O.3d 312, 383 N.E.2d 124. Statutes and administrative regulations should be read as interrelated bodies of law. *Id.* Further, a rule implemented as an extension of a statute has the full force and effect of a statute. *Id.* at 28, 27 OBR at 444, 500 N.E.2d at 1372–1373, citing *Parfitt v. Columbus Correctional Facility* (1980), 62 Ohio St.2d 434, 16 O.O.3d 455, 406 N.E.2d 528, and *Kroger Grocery & Baking Co. v. Glander* (1948), 149 Ohio St. 120, 36 O.O. 471, 77 N.E.2d 921; *Woodbridge Partners Group, Inc. v. Ohio Lottery Comm.* (1994), 99 Ohio App.3d 269, 650 N.E.2d 498.

If the phrase "may visit at any time" merely meant at any time during normal visiting hours, the creation of another class of visitors consisting of one family member, guardian, physician, or spiritual advisor with respect to visitation would be meaningless. Drake contends that this interpretation would provide a "hotel-like" atmosphere—however, Drake "may make reasonable rules to insure that such visit[s] will not unduly interfere with the operation of the home" Ohio Adm.Code 3701–17–10. Mr. Belinky asserts that he was willing to make any concessions necessary to ensure the smooth operation of the home during overnight visits.

■ R.C. 3721.13(A)(21)(c) grants nursing home residents the right to private visits at any reasonable hour. Defendants-appellees contend that overnight visits are unreasonable and the normal visitation schedule is reasonable. They further contend that Ohio Adm.Code 3701–17–10 is in conflict with R.C. 3721.13(A)(21)(c) and therefore must give way to the statute. However, we hold that Ohio Adm.Code 3701–17–10 is not in conflict with the statute, but instead gives this court guidance concerning the reasonable times for visits. "An Ohio Administrative Code section is a further arm, extension, or explanation of

statutory intent implementing a statute passed by the General Assembly." *State ex rel. Meyers v. State Lottery Comm.* (1986), 34 Ohio App.3d 232, 234, 517 N.E.2d 1029, 1031; *Foltz v. Able Fence & Guard Rail, Inc.* (Nov. 10, 1994), Lake App. No. 94–L–020, unreported, 1994 WL 660854. We hold that R.C. 3721(A)(21)(c), combined with Ohio Adm.Code 3701–17–10, provides for visitation during daily visiting hours for everyone, but one member of, the patient's or resident's immediate family, his guardian, physician, or spiritual advisor may visit the patient *at any time,* subject to any rules set forth by the home to ensure that such visits will not interfere with the operation of the home.

We therefore reverse the summary judgment on this issue and hold that a question of fact exists as to whether Drake had reasonable rules in effect which would have precluded Mr. Belinky from visiting overnight.

In the fourth issue presented for review, Mr. Belinky individually and as sponsor claims that he presented sufficient evidence to support a claim for punitive damages.

First, we determine, as we did for the first issue, that Mr. Belinky does not have standing to assert a claim for punitive damages based on any violation of R.C. Chapter 3721 by Shearer or Drake. However, as analyzed above, Mr. Belinky does have standing as a sponsor for Mrs. Belinky to assert a claim for punitive damages based on a violation of R.C. Chapter 3721.

We agree with Mr. Belinky that R.C. 3721.17(I) does not require a finding of malice as a basis for punitive damages for a violation of the rights of a nursing home patient or resident. *Sprosty v. Pearlview, Inc.* (1995), 106 Ohio App.3d 679, 666 N.E.2d 1180. R.C. 3721.17(I) specifically states that courts "may award actual and punitive damages for violation of the [nursing home patient's] rights." We follow the reasoning of the court in *Slagle v. Parkview Manor, Inc.* (Oct. 7, 1983), Stark App. No. CA–6155, unreported, 1983 WL 7079, in determining that the statute's express authorization of punitive damages against a nursing home for violating a resident's rights would be a pointless restatement of the common law if a finding of malice were necessary to support the claim. Therefore, a resident of a nursing home may recover punitive damages upon a showing that the home or any person violated the patient's rights. The trial court erred in granting summary judgment on this issue.

### III. The Defamation Claim

In the second issue presented for review, Mr. Belinky claims that a letter sent by Shearer to Dr. Bley on February 13, 1995, defamed him and is actionable.

In *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 243, 72 O.O.2d 134, 137–138, 331 N.E.2d 713, 718, the Ohio Supreme Court established the elements for a

prima facie case of libel: (1) defendants made a publication to a third person, (2) the third person understood the defamatory meaning of the publication, and (3) the actionable character of the words. "[I]t is for the court to decide as a matter of law whether certain statements alleged to be defamatory are actionable or not." *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 372, 6 OBR 421, 423–424, 453 N.E.2d 666, 669, citing *Bigelow v. Brumley* (1941), 138 Ohio St. 574, 590, 21 O.O. 471, 478–479, 37 N.E.2d 584, 593. Further, the court must look to the totality of the circumstances in determining whether a statement is defamatory as a matter of law. *Vogel v. Sekulich* (Sept. 15, 1993), Summit App. No. 16105, unreported, 1993 WL 347096. Finally, when considering the totality of the circumstances, "if allegedly defamatory words are susceptible to two meanings, one defamatory and one innocent, the defamatory meaning should be rejected, and the innocent meaning adopted." *Yeager v. Local Union 20*, 6 Ohio St.3d at 372, 6 OBR at 423, 453 N.E.2d at 669.

 Mr. Belinky contends that the letter from Shearer to Dr. Bley accused him of presenting an unacceptable risk of molesting his wife and implied that he was a sexual pervert. Considering the totality of the circumstances, we hold as a matter of law that the letter from Shearer to Dr. Bley was not defamatory. Shearer's letter was a response to Dr. Bley's request that Shearer reconsider her decision regarding overnight visitation. In the letter, Shearer expressed concern for potential liability to the nursing home because Mrs. Belinky could not consent to sexual activity. Shearer did not accuse Mr. Belinky of any past improprieties, nor did she speculate as to his personal propensities. She merely explained her decision based on her concern for the liability of the nursing home and the protection of a patient. We hold that the letter was not defamatory as a matter of law. The trial court properly granted summary judgment on this claim.

## IV. Claim for The Intentional Infliction of Emotional Distress

 In the third issue presented for review, Mr. Belinky claims that the actions of the defendants-appellees constituted intentional infliction of emotional distress.

 The Ohio Supreme Court first recognized the tort of intentional infliction of emotional distress in *Yeager, supra*. In order to establish such a claim, the plaintiff must show that the conduct of the defendant was outrageous and beyond all possible bounds of decency. The conduct must also be the proximate cause of the plaintiff's psychic injury, which must be of such a serious nature that no reasonable man could be expected to endure it. *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 34, 11 OBR 63, 66–67, 463 N.E.2d 98, 103.

We hold, as a matter of law, that the conduct of Shearer and Drake in denying Mr. Belinky overnight visitation, especially considering the ambiguous statute and the untested administrative rule, was insufficient to support a claim for intentional infliction of emotional distress. Construing the evidence most favorably to Mr. Belinky, we conclude that the denial of overnight visitation was done with the intent of protecting the home from liability and was not outrageous considering today's litigious society. Mr. Belinky was at all times allowed to visit during normal visiting hours and for a period was allowed to extend those visiting hours until 9:30 p.m. Ironically, by trying to prevent a possible lawsuit, Shearer subjected herself and the home to this lawsuit. Although Shearer and Drake could have handled the situation in a more effective manner and probably did not have adequate grounds for fearing that a concerned and dedicated husband would act adversely to his wife's best interests, we decline to hold that this conduct could lead an average member of the community to exclaim "Outrageous!" See *Yeager*, 6 Ohio St.3d at 375, 6 OBR at 426–427, 453 N.E.2d at 671. We therefore affirm the trial court's granting of summary judgment on this claim.

## V. Conclusion

We hold, as a matter of law, that the defamation claim and the claim for intentional infliction of emotional distress claim were unsupported by the evidence, and that the trial court properly granted summary judgment to the defendants-appellees on those claims. However, we reverse the trial court's summary judgment pertaining to R.C. Chapter 3721. We remand the case to the trial court in light of our opinion concerning the nursing home patients' bill of rights.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

HILDEBRANDT, P.J., and SHANNON, J., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.