OPINION
{¶ 1} Appellants, Michelle Treadway, Joshua Treadway, Michael Isaac Treadway, and *Page 2 
David Treadway, are the children of Charles Treadway, who is the son of Dorothy Treadway. In 1990, Dorothy executed a will naming her husband as the sole beneficiary of her estate. In the event her husband predeceased her, Dorothy named her son Charles as the sole beneficiary. If Charles also predeceased her, Dorothy names Charles's wife and children as her beneficiaries.
 {¶ 2} During her life, Dorothy attended the Free Pentecostal Church of God, which is an appellee in this case. Appellee, Burtle Zimmerer, is the daughter of the pastor of the church and was also an active participant in the church. In July of 2001, Dorothy was diagnosed with cancer. During her illness, Zimmerer provided assistance to Dorothy by driving her to appointments and running errands for her.
 {¶ 3} In August of 2002, Zimmerer drove Dorothy to an appointment with an attorney. During the appointment, Dorothy made changes to her estate plan. She signed a will leaving her entire estate to Zimmerer. In addition, she made Zimmerer her attorney in fact under a power of attorney. In September of 2002, she visited another attorney where she signed another will leaving her estate to Zimmerer and naming Zimmerer as executor of her estate, a new power of attorney naming Zimmerer as her attorney in fact, and transfer on death deeds naming Zimmerer as the transfer on death beneficiary.
 {¶ 4} In August of 2004, Dorothy's health deteriorated. Using the power of attorney, Zimmerer had Dorothy admitted to Glen Meadows, a facility run by appellee, CHS-Miami Valley, Inc. Zimmerer did not tell Dorothy's family that her health had deteriorated or that she had been admitted to Glen Meadows. During Dorothy's stay at Glen Meadows, appellants and other family members were not permitted to visit Dorothy unless a nurse or Zimmerer was present, and financial matters were not permitted to be discussed during these visits. Zimmerer told appellants that Dorothy was well and would be returning home soon. In late September, 2004, Zimmerer moved Dorothy home under the care of hospice with knowledge *Page 3 
that Dorothy was nearing death. Zimmerer told appellants neither that Dorothy had moved home nor that she was nearing death. Zimmerer remained with Dorothy during her final days. Dorothy died on October 5, 2004.
 {¶ 5} On January 19, 2005, Charles filed suit against Zimmerer in the General Division of the Butler County Court of Common Pleas, alleging undue influence. A settlement was reached in that case and by entry filed June 16, 2006, the court dismissed the action with prejudice. Appellants filed a complaint on December 19, 2006 and an amended complaint on January 11, 2007, also in the General Division, alleging nine causes of action against appellees in this case, including violations of the nursing home residents' bill of rights, fraud, conspiracy to defraud, conspiracy to interfere with expectancy of inheritance, interference with expectancy of inheritance, breach of fiduciary duty, conversion, incapacity to contract, and intentional infliction of emotional distress. Appellees argued in response that the complaint should be dismissed because appellants lacked standing to assert the claims, the complaint failed to state a claim upon which relief could be granted, and the court lacked standing to hear the claims. The trial court granted the motions to dismiss as to all claims and as to all parties, relying on these three theories of law. Appellants appeal, raising five assignments of error.
 {¶ 6} Appellants' first assignment of error states:
 {¶ 7} "THE TRIAL COURT ERRED BY DISMISSING COUNT I FINDING THAT APPELLANTS' [SIC] LACKED STANDING TO BRING A CLAIM PURSUANT TO ORC 3721."
 {¶ 8} In Ohio, before a court may consider the merits of a legal claim, "the person seeking relief must establish standing to sue. * * * The concept of standing embodies general concerns about how courts should function in a democratic system of government." State ex rel.Ohio Academy of Trial Lawyers v. Sheward, 86 Ohio St.3d 451, 469,1999-Ohio-123, citing Ohio Contractors Assn. v. Bicking,71 Ohio St.3d 318, 320, 1994-Ohio-183. Thus, the *Page 4 
Ohio Supreme Court has stated, "in the vast majority of cases brought by a private litigant, `"the question of standing depends upon whether the party has alleged such a personal stake in the outcome of the controversy, as to ensure that the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution."`" Sheward at 469, quoting State exrel. Dallman v. Franklin Cty. Court of Common Pleas (1973),35 Ohio St.2d 176, 178-179, quoting Sierra Club v. Morton (1972), 405 U.S. 727,732, 92 S.Ct. 1361. Whether the established facts confer standing to assert a claim involves a question of law that we review de novo.Cuyahoga Cty. Bd. of Commrs. v. State of Ohio, 112 Ohio St.3d 59,2006-Ohio-6499, ¶ 23.
 {¶ 9} R.C. 3721.13(A)(21), a provision of Ohio's residents' rights law, provides, in relevant part, that a resident of a long term care facility shall have:
 {¶ 10} "The right upon reasonable request to private and unrestricted communications with the resident's family, social worker, and any other person, unless not medically advisable as documented in the resident's medical record by the attending physician * * *."
 {¶ 11} The enforcement provisions of this legislation are found in R.C. 3721.17(I)(1)(a), which states a "resident whose rights under sections 3721.10 to 3721.17 of the Revised Code are violated has a cause of action against any person or home committing the violation." R.C.3721.17(I)(1)(b) provides that an action:
 {¶ 12} "may be commenced by the resident or by the resident's legal guardian or other legally authorized representative on behalf of the resident or the resident's estate. If the resident or the resident'slegal guardian or other legally authorized representative is unable tocommence an action under that division on behalf of the resident, the following persons in the following order of priority have the right to and may commence an action under that division on behalf of the resident or the resident's estate:
 {¶ 13} "(i) The resident's spouse; *Page 5 
 {¶ 14} "(ii) The resident's parent or adult child;
 {¶ 15} "(iii) The resident's guardian if the resident is a minor child;
 {¶ 16} "(iv) The resident's brother or sister;
 {¶ 17} "(v) The resident's niece, nephew, aunt, or uncle." (emphasis added).
 {¶ 18} Appellants have no right to assert a claim individually under the statute because they are not intended beneficiaries of the protections of the statute. As such, they lack standing to assert such claims in their individual capacity. Belinky v. Drake Center, Inc.
(1996), 117 Ohio App.3d 497, 504. Appellants do not have standing to bring a claim under R.C. 3721.17(I)(1)(b) on behalf of Dorothy because they are not the legally authorized representative of her estate, and there is no evidence that the legally authorized representative of her estate is "unable to commence an action" on behalf of the estate, as is required by the statute. Even if such evidence existed, appellants are not included in the list of individuals authorized by statute to assert claims on behalf of the resident or its estate. As such, applying a de novo standard of review, we find that the trial court did not err when it determined that appellants lack standing to assert this claim under R.C. Chapter 3721. The first assignment of error is overruled.
 {¶ 19} Appellant's second assignment of error states:
 {¶ 20} "THE TRIAL COURT ERRED BY GRANDING [SIC] APPELLEE'S MOTIONS TO DISMISS BY HOLDING THAT APPELLANTS LACKED STANDING TO BRING A CLAIM UNDER TORTUOUS [SIC] INTERFERENCE WITH AN EXPECTANCY OF INHERITANCE."
 {¶ 21} The Ohio Supreme Court announced the elements of a claim of tortious interference with expectancy of inheritance in Firestone v.Galbreath (1993), 67 Ohio St.3d 87, 88, as follows:
 {¶ 22} "(1) an existence of an expectancy of inheritance in the plaintiff; (2) an intentional interference by a defendant(s) with that expectancy of inheritance; (3) conduct by *Page 6 
the defendant involving the interference which is tortious, such as fraud, duress or undue influence, in nature; (4) a reasonable certainty that the expectancy of inheritance would have been realized, but for the interference by the defendant; and (5) damage resulting from the interference."
 {¶ 23} In Firestone, the Ohio Supreme Court stated that any person who can prove the elements of the tort has standing to maintain a claim. Id. The fourth element of the test requires that appellants demonstrate to a reasonable certainty that the expectancy of inheritance would have been realized but for the tortious conduct. This requires a showing to a reasonable certainty that, had the alleged undue influence not occurred, appellants would have realized their expectancy to inherit from Dorothy's estate.
 {¶ 24} Appellants were contingent beneficiaries of Dorothy's prior will. They only stood to inherit if their grandfather and father predeceased Dorothy. While their grandfather did predecease her, their father did not. Appellants argue that they are not required to prove a vested interest in the estate in order to recover on a claim of tortious interference with expectancy of inheritance. Appellants argue that a claim of tortious interference with expectancy of inheritance could be prosecuted prior to the death of the testator and a person with a contingent interest could theoretically recover. We decline to consider whether appellants' assertions are correct because, in the case at bar, Dorothy's death preceded their claim. The facts of the case make it clear that the appellants would not have been beneficiaries of Dorothy's estate (probate or non-probate), even if the purported tortious interference had not occurred. In light of these facts, it is impossible for appellants to prove the fourth element of the tort. As such, applying a de novo standard of review, we find that the trial court did not err when it determined that appellants lacked standing to assert this claim. Appellant's second assignment of error is overruled.
 {¶ 25} Appellant's third assignment of error states: *Page 7 
 {¶ 26} "THE TRIAL COURT ERRED BY DISMISSING FOR LACK OF JURISDICTION APPELLANTS' CLAIMS ALLEGING CONSPIRACY, FRAUD, CONVERSION, BREACH OF FIDUCIARY DUTIES, AN ACCOUNTING, AND INCAPACITY TO CONTRACT."
 {¶ 27} The trial court determined that it was without jurisdiction to hear appellants' claims alleging conspiracy to defraud the decedent, fraud upon the decedent, breach of fiduciary duties owed to the decedent, conversion of the decedent's assets, and incapacity of the decedent to enter a contract. The trial court found that all of these claims were within the exclusive jurisdiction of the probate court and should have been brought as a will contest. The court likewise denied the fiduciary accounting requested as relief by appellants.
 {¶ 28} Under R.C. 2101.24(A)(1)(l), the probate court has exclusive jurisdiction "[t]o render declaratory judgments, including, but not limited to, those rendered pursuant to section 2107.084 of the Revised Code." Under R.C. 2721.05(C), "[a]ny person interested as or through an executor, administrator, trustee, guardian, or other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust, in the administration * * * of the estate of a decedent * * * may have a declaration of rights or legal relations in respect thereto * * * [t]o determine any question arising in the administration of the estate * * * including questions of construction of wills and other writings." R.C.2101.24 and 2721.05 "taken together * * * give the probate court exclusive jurisdiction over declaratory actions brought `to determine any question arising out of the administration of the estate.'"Lamar v. Washington, Allen App. No. 1-05-54, 2006-Ohio-1414, ¶ 15; see also Grimes v. Grimes, 173 Ohio App.3d 537, 2007-Ohio-5653, ¶ 17. Probate courts are therefore vested "with jurisdiction over declaratory judgment actions upon questions relating to the administration of an estate." State ex rel. Lipinski v. Cuyahoga Cty. Common Pleas Court,Probate Div., 74 Ohio St.3d 19, 22, 1995-Ohio-96; Grimes at ¶ 17.
 {¶ 29} In the case at bar, no estate was administered because the decedent's assets *Page 8 
passed to recipients by beneficiary designation outside of the probate process. However, under the provisions cited above, a challenge to such a transfer remains within the exclusive jurisdiction of the probate court because the setting aside of such a transfer, as requested in relief under the claim, would cause the asset to revert to the decedent's probate estate. Id. This would apply with respect to appellants' claims of conspiracy, fraud, conversion, and incapacity to contract. The claim of breach of fiduciary duty and the request for an accounting challenge Zimmerer in her capacity as a fiduciary of the decedent or the decedent's estate, and are likewise within the exclusive jurisdiction of the probate court. Accordingly, the trial court did not err when it determined that it lacked subject matter jurisdiction to hear appellants' claims.
 {¶ 30} Furthermore, appellants lack standing to assert these claims. Each of the claims alleged by appellants asserts an injury suffered by the decedent. Under law, those claims belong to the estate of Dorothy Treadway and may not be asserted by third parties. While the beneficiaries of the estate may have a claim against the executor for failing to protect the assets of the estate in refusing to pursue such claims, appellants are not beneficiaries of the estate; therefore, they have no right to assert even that claim.
 {¶ 31} For the foregoing reasons, appellants' third assignment of error is overruled.
 {¶ 32} Appellants' fourth assignment of error states:
 {¶ 33} "THE TRIAL COURT ERRED BY DISMISSING APPELLANTS' CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS."
 {¶ 34} Intentional infliction of emotional distress occurs where one person "by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another." Yeager v. Local Union 20,Teamsters, Chauffeurs, Warehousemen Helpers of Am. (1983),6 Ohio St.3d 369, syllabus. The trial court dismissed appellants' tort claim of intentional infliction of emotional distress, finding as a matter of law that "the conduct *Page 9 
complained of * * * does not amount to conduct that was so extreme and outrageous that it went beyond all possible bounds of decency * * *." In so holding, the trial court found that appellants failed to state a claim upon which relief could be granted and dismissed pursuant to Civ.R. 12(B)(6). We review a judgment granting a motion to dismiss a complaint de novo. State ex rel. Dickens v. Monroe, Warren App. No. CA2006-03-035, 2006-Ohio-5503, ¶ 10. In order to grant a Civ.R. 12(B)(6) motion to dismiss, "it must appear beyond a doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery."O'Brien v. Univ. Community Tenants Union (1975), 42 Ohio St.2d 242, syllabus.
 {¶ 35} In support of its decision to dismiss, the trial court citedSpringer v. Fitton Ctr for Creative Arts, Warren App. No. CA2004-06-128,2005-Ohio-3624, ¶ 55. In that case, this court stated that "merely refusing to assist an employee in obtaining therapy, or merely discharging an employee, even unjustifiably, does not constitute conduct that is `extreme or outrageous' as defined by the Yeager court." Id. at ¶ 54. Springer held that the appellant's allegations in that case, "even if proved true, would not amount to conduct that was so extreme and outrageous that it went beyond all possible bounds of decency; nor do they constitute, as a matter of law, conduct that is completely intolerable in a civilized community." Id. at ¶ 55. Springer illustrates that a trial court is permitted to dismiss a case by determining as a matter of law that the conduct alleged does not amount to extreme or outrageous conduct. See id. However, the facts of that case are not relevant to the facts in the case at bar.
 {¶ 36} Appellants have alleged a variety of facts, some of which are relevant to this claim and some of which are not. We assume for purposes of review that all alleged facts are true. Specifically, appellants have alleged that in August 2004, Zimmerer moved Dorothy into Glen Meadows due to a deterioration in her health, and that Zimmerer did not tell appellants about this move. Appellants allege that Zimmerer instructed Glen Meadows not to permit *Page 10 
appellants to visit with Dorothy unless Zimmerer or a nurse was present. Appellants allege that Zimmerer told them in late September that Dorothy was well and would be returning home. They allege that Zimmerer did not inform them when Dorothy was discharged to home, and did not inform them that Dorothy was nearing death. Zimmerer was present with Dorothy during the days preceding her death. In alleging these facts, appellants have argued that Zimmerer intentionally interfered with their visitation with their dying grandmother. We find that it is possible that appellants could prove facts that would allow a trier of fact to determine that Zimmerer's conduct rises to the level of "extreme and outrageous." To the extent that appellants allege that their purported psychic injury is the results of Zimmerer's interference with their visitation with their dying grandmother, we find that the trial court erred when it determined as a matter of law that the conduct alleged by appellants "does not amount to conduct that was so extreme and outrageous that it went beyond all possible bounds of decency."
 {¶ 37} With respect to Zimmerer, appellants have also alleged conduct that they insinuate resulted in their inability to realize an inheritance from their grandmother. To the extent that appellants' claims rely on their inability to realize an inheritance as the cause of their emotional distress, we find that the trial court did not err when it determined as a matter of law that the claim did not allege extreme or outrageous conduct. There is no precedent in jurisprudence for a finding that affecting a financial loss can amount to the kind of extreme and outrageous conduct necessary to state a claim for intentional infliction of emotional distress. See, e.g., Craddock v.Flood Co., Summit App. No. 23882, 2008-Ohio-112, ¶ 21.
 {¶ 38} Appellants have not alleged that CHS-Miami Valley did anything other than follow the instructions of Dorothy's attorney in fact. Likewise, with respect to Free Pentecostal Church of God, appellants have only alleged that members of the church attended to and visited with Dorothy during her final days. As to both, appellants have alleged no conduct that *Page 11 
could be considered either extreme or outrageous. For the foregoing reasons, we find that the trial court did not err in determining as a matter of law that this conduct is not the extreme or outrageous conduct required to state a claim for intentional infliction of emotional distress.
 {¶ 39} Accordingly, the trial court is affirmed in its decision to dismiss the claim as to Free Pentecostal Church of God and CHS-Miami Valley, Inc., but because the trial court erred in determining that appellants had failed to state a claim of intentional infliction of emotional distress against Zimmerer, that part of the decision is reversed. However, the claim against Zimmerer may go forward only as limited to conduct that amounted to interference with visitation, and damages are likewise limited.
 {¶ 40} We note for the record that appellants rely on the bare assertion that they have experienced "psychic injury" to support this claim, though they have alleged no facts in support of such injury. In issuing this decision, we find only that appellants have met the minimal burden of surviving a motion to dismiss under Civ.R. 12(B)(6), and render no opinion as to whether such a claim could survive a motion for summary judgment. On remand, the trial court under Civ.R. 12(B) may, after giving notice, convert the motion to one for summary judgment under Civ.R. 56, and if appropriate, dispose of it accordingly.
 {¶ 41} Appellant's fifth assignment of error states:
 {¶ 42} "THE TRIAL COURT ERRED BY HOLDING THAT APPELLANTS ARE CHALLENGING CHARLES TREADWAY'S SETTLEMENT, AND THAT APPELLANTS LACK STANDING."
 {¶ 43} Our reading of the trial court's decision reveals that the trial court did not hold that appellants challenged Charles Treadway's settlement. Appellants stated in their brief that they raised this assignment of error "in an abundance of caution" because they found it unclear whether "the trial court based its decision holding that appellants lacked standing" on a finding that appellants were attempting to challenge Charles Treadway's settlement. We *Page 12 
find it clear from the trial court's decision that, in finding that appellants lacked standing, it relied on the reasons discussed above. Because it is without merit, appellants' fifth assignment of error is overruled.
 {¶ 44} Judgment affirmed in part, reversed in part, and remanded.
BRESSLER and POWELL, JJ., concur. *Page 1