[Cite as *Brooks v. Montgomery Care Ctr.*, 2014-Ohio-4644.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

TRACEY BROOKS, Individually and as Guardian for George Willoughby,

    Plaintiff-Appellant,

  vs.

MONTGOMERY CARE CENTER,

    Defendant-Appellee,

  and

CHS-OHIO VALLEY, INC., d.b.a TERRACE VIEW GARDENS,

    Defendant.

APPEAL NO. C-130838
TRIAL NO. A-1205355

*O P I N I O N.*

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  October 22, 2014

*William B. Singer*, for Plaintiff-Appellant,

*Rendigs, Fry, Kiely & Dennis, LLP*, and *Paul W. McCartney*, for Defendant-Appellee.

Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}    This is an appeal from a summary judgment granted in favor of a nursing home in a lawsuit alleging that a patient of the nursing home had been mistreated.  Because we find that the patient's guardian failed to set forth any evidence that the patient had suffered compensable harm at the nursing home, we affirm the judgment of the trial court.

### Allegations of Mistreatment and a Lawsuit

{¶2}    In February 2009, George Willoughby suffered a traumatic brain injury.  As a result of the injury, he is able to communicate only on a limited basis, primarily utilizing nods, hand gestures and a few words.  His sister, Tracey Brooks, has been appointed his guardian.

{¶3}    Mr. Willoughby was admitted to University Hospital following the injury and later released to the Drake Center.  In May 2009, Mr. Willoughby was moved from the Drake Center to the Montgomery Care Center ("MCC").  While he was there, Ms. Brooks alleges that he was sometimes left to sit in soiled Attends, was placed in a wheelchair in a locked, tilted-back position that prevented him from moving, was not cleaned regularly by staff, and was chemically restrained by the use of pain medication.  As a result of some violent episodes, Mr. Willoughby was transferred in April 2010 to Good Samaritan Hospital for a psychiatric evaluation.  MCC told Ms. Brooks that it would not accept her brother back as a resident, so Ms. Brooks had him transferred to the Terrace View Gardens nursing home.

{¶4}    Ms. Brooks was dissatisfied with the treatment her brother received at both nursing facilities.  On behalf of her brother and herself, she filed a lawsuit  alleging that MCC and Terrace View Gardens had violated Mr. Willoughby's rights under R.C.

2

3721.13—the Nursing Home Patients' Bill of Rights. Terrace View Gardens and MCC filed motions for summary judgment. The trial court granted the summary judgments. Ms. Brooks appealed only the judgment granted to MCC.

{¶5} In her sole assignment of error, Ms. Brooks asserts that the court erred in granting summary judgment to MCC. We disagree.

### The Nursing Home Patients' Bill of Rights

{¶6} R.C. 3721.13 provides a "non-exhaustive list of rights for the safety, treatment, privacy, and civil rights of nursing home patients." *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9, ¶ 9. In her complaint, Ms. Brooks alleged conduct that violated several of the rights. Specifically, she alleged the following:

- MCC failed to clean Mr. Willoughby regularly or thoroughly. *See* R.C. 3721.13(A)(1) (guaranteeing "[t]he right to a safe and clean living environment").

- MCC failed to change Mr. Willoughby's bed linens. *See* R.C. 3721.13(A)(5) (guaranteeing "[t]he right to have clothes and bed sheets changed as the need arises").

- MCC restrained her brother by putting him in a tilted-back wheelchair, used other physical and chemical restraints inappropriately, and allowed him to remain unattended for long periods of time. *See* R.C. 3721.13(A)(13) (guaranteeing "[t]he right to be free from physical or chemical restraints or prolonged isolation").

- MCC transferred her brother without consultation. *See* R.C. 3721.13(A)(1)(30) (guaranteeing "[t]he right not to be transferred or

3

discharged from the home unless the transfer is necessary because of one [of the statute's enumerated reasons]").

{¶7}     Under the statutory scheme, three types of remedies are available for violations of a patient's rights.  The patient may file an administrative grievance with a committee established by R.C. 3721.12(A)(2).  R.C. 3721.17(A).  A report may be filed with the department of health.  R.C. 3721.13(B).  Additionally, a patient may assert a private action for injunctive relief, or in certain circumstances, for damages.  R.C. 3721.17(I)(2).

> The plaintiff in an action filed under division (I)(1) * * * may obtain injunctive relief against a violation of the resident's rights.   The plaintiff also may recover compensatory damages based upon a showing, by a preponderance of the evidence, that the violation of the resident's rights resulted from a negligent act or omission of the person or home and that the violation was the proximate cause of the resident's injury, death, or loss to person or property.

*Id.*  If compensatory damages are awarded, punitive damages are possible.  The statute, however, does not allow for nominal damages.  *Silver Circle, Inc. v. Thomas*, 1st Dist. Hamilton Nos. C-950146 and C-950166, 1995 Ohio App. LEXIS 5193 (Nov. 29, 1995).

### No Evidence of Compensable Harm was Presented

{¶8}     Because nominal damages are not available, Ms. Brooks had to show that she had suffered some "compensatory damages" to recover under the statute.  The Ohio Supreme Court has defined compensatory damages as "those which measure the actual loss, and are allowed as amends therefor."  *Fantozzi v. Sandusky Cement Prods. Co.*, 64 Ohio St.3d 601, 612, 597 N.E.2d 474 (1992).  Compensatory

4

damages include both economic damages—"direct pecuniary loss, such as hospital and other medical expenses immediately resulting from the injury, or loss of time or money from the injury, loss due to the permanency of the injuries, disabilities or disfigurement"—and noneconomic damages. *Id.* "Usually awarded for pain and suffering, noneconomic damages can also include compensation for loss of ability to perform usual functions; loss of consortium, mental anguish, or other intangible loss; and humiliation or embarrassment." *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, 855 N.E.2d 825, ¶ 19.

{¶9}   Ms. Brooks offered no evidence that her brother suffered direct pecuniary loss. She did state that she herself had suffered economically because she had to miss work to supervise Mr. Willoughby's care and because she paid others to check in on him. R.C. 3721.17, however, only allows for the recovery of compensatory damages incurred by the patient. *Belinky v. Drake Center*, 117 Ohio App.3d 497, 503, 690 N.E.2d 1302 (1st Dist.1996); *Shelton v. LTC Mgt. Serv.*, 4th Dist. Highland No. 03CA10, 2004-Ohio-507, ¶ 6.

{¶10}   Nor did Ms. Brooks present any evidence of physical injury to Mr. Willoughby. Instead, she stated that her brother's physical condition did not change during the time he was a resident of MCC, and that he had not suffered a physical injury there. No physician indicated that Mr. Willoughby's condition or his recovery was somehow affected by the care he received at MCC. Ms. Brooks maintains that this case is similar to *Estate of Alma Richardson v. Abbey Nursing Home,* 8th Dist. Cuyahoga No. 46126, 1983 Ohio App. LEXIS 12777 (Dec. 8, 1983), in which the Eighth Appellate District affirmed the award of compensatory damages for a resident of a nursing home. But in *Richardson*, the resident had bruises and a rash, and had

apparently been sexually assaulted. Here, there was no evidence introduced of any sort of physical injury to Mr. Willoughby.

{¶11}   Absent evidence of economic damages, Ms. Brooks needed to present evidence of the noneconomic damages that Mr. Willoughby suffered. Ms. Brooks did not present evidence of any pain caused to Mr. Willoughby by his care at MCC. To the contrary, one of her complaints is that the nursing home gave Mr. Willoughby the pain medicine Percocet when it was not clear that he was in pain.

{¶12}   Under Ohio law, even without proof of contemporaneous physical injury, one may recover for mental anguish, humiliation or embarrassment. *Schultz v. Barberton Glass Co.*, 4 Ohio St.3d 131, 447 N.E.2d 109 (1983), syllabus. Mr. Willoughby was unable to express whether he had suffered any mental anguish or embarrassment. It has been held, however, that "lay witnesses who are closely acquainted with the injured party are completely competent to testify to this type of damage." *Barker v. Netcare Corp.*, 147 Ohio App.3d 1, 768 N.E.2d 698 (10th Dist.2001). In *Barker*, a patient's husband testified that following his wife's restraint at a hospital where she had gone to report a rape, she was not her emotional self and that she was "very depressed and weepy and withdrawn." Ms. Brooks offered no such evidence regarding her brother's mental state. At best, she was able to testify about what she assumed he would feel given the care he had received. Such assumption is too speculative to survive a motion for summary judgment. *See Belinky v. Drake Center, Inc.*, 1st Dist. Hamilton No. C-980634, 1999 Ohio App. LEXIS 3110, *7-8 (June 30, 1999).

## Conclusion

{¶13}   To recover compensatory damages under the Nursing Home Patients' Bill of Rights, a plaintiff must demonstrate that he has suffered compensatory

6

damages. Ms. Brooks has presented no such evidence, so we must affirm the decision of the trial court.

{¶14} We add one note. The notion that someone must suffer compensable injury in order to obtain compensable damages does not mean that a patient who has suffered mistreatment of the type alleged by Ms. Brooks is without redress under the Patients' Bill of Rights. As we noted earlier, in addition to an award of damages, the statute allows for administrative remedies as well as injunctive relief. Such remedies may not necessarily require compensable harm, only a violation of the patient's right. In this case, however, Ms. Brooks seeks only compensatory damages. Because she has shown none, the trial properly granted summary judgment.

{¶15} The assignment of error is overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

**DINKELACKER, P.J.,** and **FISCHER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.