SETHI et al., Appellants,

v.

WFMJ TELEVISION INC. et al., Appellees.

[Cite as *Sethi v. WFMJ Television, Inc.* (1999), 134 Ohio App.3d 796.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 97 C.A. 232.

Decided Sept. 22, 1999.

798

799

Michael P. Marando, for appellants.

Stephen T. Bolton and Joseph R. Young, Jr., for appellees.

_____

Cox, Presiding Judge.

This matter presents a timely appeal from a decision rendered by the Mahoning County Common Pleas Court, granting summary judgment in favor of defendants-appellees, WFMJ Television Inc., et al.

This action arose as a result of certain news reports which were broadcast by appellees on February 8, 1993 and February 9, 1993. Prior to February 1993, defendant-appellee Ernest Freeman, a news reporter for defendant-appellee WFMJ Television, Inc., read a news account concerning a report compiled by the Public Citizen Health Research Group in Washington, D.C. Such report concluded that state medical boards were lax in disciplining negligent doctors. Freeman believed this report to be of public interest, desired to localize the story and obtained permission to investigate it from his assignment director, Sheila Patrick. Freeman contacted the Public Citizen Health Research Group for information on February 5, 1993. Freeman further contacted the Ohio State Medical Board and attempted to interview a local board member, Dr. Anand Garg.

On the same day, Lana Stull telephoned WFMJ and spoke with the assignment director about a complaint that she had filed with the Ohio State Medical Board concerning local doctors, upon which the board determined that it would take no action. Stull stated that she had subsequently filed medical malpractice claims against the local doctors involved in her treatment.

Stull then appeared at WFMJ on February 5, 1993 for an interview with Freeman, bringing with her copies of complaints she had filed against plaintiff-appellant, Usha Sethi, M.D., and Dr. Renato Simon, along with medical records attached as exhibits to her complaints. Stull's malpractice claim against appellant Sethi, a local doctor who was board certified in obstetrics and gynecology, was filed in 1992. Stull alleged that Sethi, had performed surgery to remove her right ovary; however, medical tests taken at a later date indicated that the ovary was still in place. Freeman stated that he did not form any conclusion concerning whether Stull's right ovary was or was not in place.

Following his discussion with Stull, Freeman examined the case files located in the court clerk's office relating to the complaints filed against Sethi and Renato Simon. Freeman thereafter attempted to contact·Sethi, but was informed that she was in surgery and thus, was unavailable to speak with him. Freeman stated that after he made further efforts to speak with both Sethi and Simon on February 8, 1993 to no avail, the decision was made to broadcast his story.

The first news report was broadcast on February 8, 1993 and focused primarily upon the report of the Public Citizen Health Research Group. Freeman did point to Stull's medical concerns by indicating that she claimed "her doctor told her she had performed a successful surgical procedure only to find out later it had not been done." The broadcast included an excerpt from Freeman's interview with Lana Stull, wherein she stated:

"I turned her in to the State Medical Board in Columbus. And they'd had the papers for about seven months, and I got a letter back stating they didn't think she had done anything wrong and thanked me for informing them."

Freeman also pointed out in this broadcast that Dr. Anand Garg was a local member of the Ohio State Medical Board and that he repeatedly had no comment to offer regarding Freeman's inquiries about disciplinary procedures for negligent doctors. No doctor other than Garg was mentioned by name.

The following morning, legal counsel for Sethi contacted WFMJ to request a taped copy of the February 8, 1993 news broadcast and to inform WFMJ that he had advised Sethi not to speak with Freeman concerning his news report.

The second segment of Freeman's news report was broadcast on February 9, 1993 and mentioned both Sethi and Simon. The February 9, 1993 broadcast began with opening remarks from the news anchorpersons, reminding the viewing audience that the topic at issue was medical negligence. Following such remarks, the report then turned to Freeman's interview with Lana Stull and the following colloquy:

"ERNIE FREEMAN: * * * This woman alleges she's a victim of medical negligence. In 1990, she went to Boardman doctor Usha Sethi to have an ovary removed.

"LANA STULL: She told me that she had removed the ovary and cyst and I wouldn't have any more problems and a few months down the road I started having the same problems.

"ERNIE FREEMAN: Medical records show Dr. Sethi removed Stull's right tube and ovary in November of 1990, but in an examination less than one year later, medical records showed both of Stull's ovaries are well demonstrated and normal in size.

"LANA STULL: And it showed that I still had both ovaries, that cyst on the left ovary, everything.

"ERNIE FREEMAN: Then in January of 1992, Dr. Renato Simon of Liberty supposedly removes Mrs. Stull's left ovary.

"LANA STULL: I was kind of leery about what he had done and I had problems right away. I had two ultrasounds done after him that showed I still had both ovaries and the cyst.

"ERNIE FREEMAN: At this point, Stull said she contacted the State Medical Board. She said it told her the doctors had done nothing wrong. Yesterday we tried talking with Doctor Garg, a State Medical Board member about how investigations are conducted. He had no comment. On Friday, we contacted Dr. Sethi's office. She was unavailable.

"Although none of the doctors would talk to us about why both of Mrs. Stull's ovaries are still in place today, they might have to talk in court because Mrs. Stull has filed malpractice suits against both of them."

On February 8, 1994, Sethi, along with plaintiffs-appellants, V.K. Sethi, M.D., Neil Sethi and Drs. Sethi, Inc. filed a complaint against appellees. Appellants alleged in their complaint that the broadcasts at issue defamed Usha Sethi. The complaint further alleged that the statement made during the broadcast that Sethi did not want to speak with appellees about the matter at hand constituted an intentional and malicious falsehood.

V.K. Sethi, M.D., a local doctor board certified in pediatrics and the husband and business partner of Usha Sethi, individually alleged that he suffered personal damages as a result of the defamation of his wife. Neil Sethi individually alleged that he suffered personal humiliation and mental anguish as a result of the defamation of his mother, Usha Sethi. It was also alleged by Drs. Sethi, Inc., an Ohio professional corporation under which both Usha and V.K. conducted their business, that economic loss was suffered as a result of the alleged defamation of Usha.

Appellees filed an answer denying that the broadcasts in question were false or defamatory concerning Usha and specifically asserting that the subject broadcasts were true or substantially true, were privileged and were made without actual malice. Following discovery, appellees filed a motion for summary judgment on November 20, 1996 arguing that (1) Ohio law does not recognize derivative claims for defamation and thus, the claims of V.K. Sethi, Neil Sethi and Drs. Sethi, Inc. must fail as a matter of law, (2) the February 8, 1993 broadcast was not "of and concerning" Usha Sethi and therefore, no defamation claim could exist for the broadcast, (3) the broadcasts were privileged under R.C. 2317.05 as being fair and impartial reports of documents filed in a pending civil action, and (4) the broadcasts were susceptible to an innocent, rather than a defamatory, construction.

On October 17, 1997, the trial court filed its judgment entry, sustaining appellees' motion for summary judgment and specifically finding:

"The communications which are the subject of Plaintiffs' action in defamation do not, as a matter of law, support such action.

"The Defendants' broadcast of February 8, 1993 does not mention the Plaintiffs and provided no basis to conclude that any statement was made of and concerning the Plaintiffs.

"The content of Defendants' broadcast of February 9, 1993 has not been shown to be anything other than a fair and impartial report of the contents of documents in a judicial proceeding entitled to the privilege set forth at R.C. Section 2317.05. The statement that Plaintiff was unavailable to comment was substantially true."

It is from this decision that the within appeal emanates.

Appellants' sole assignment of error on appeal alleges:

"The trial court erred as a matter of law in granting Appellees' Motion for Summary Judgment."

In determining whether a trial court has properly granted summary judgment, a court of appeals must conduct a *de novo* review of the record. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 671 N.E.2d 241.

Civ.R. 56(C) states:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As set forth by the Ohio Supreme Court in *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1132:

"Under Civ.R. 56, summary judgment is proper when '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." (Citations omitted.)

The Ohio Supreme Court in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, has held that a moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support its claims.

The Ohio Supreme Court in *Dresher* further held that once the moving party has met its initial burden, the nonmoving party must then produce any evidence for which such party bears the burden of production at trial.

■ In a claim for libel, a plaintiff must establish that (1) a false statement of fact was made concerning him or her, (2) the statement was defamatory, (3) the statement was written, (4) the statement was published and (5) in publishing the statement, the defendant acted with the requisite degree of fault. *Bruss v. Vindicator Printing Co.* (1996), 109 Ohio App.3d 396, 672 N.E.2d 238 citing *Hersch v. E.W. Scripps Co.* (1981), 3 Ohio App.3d 367, 3 OBR 430, 445 N.E.2d 670.

■    Summary judgment is appropriate in defamation actions because the determination of whether words are defamatory is a question of law to be decided by the court. *Vail v. The Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 649 N.E.2d 182. To survive a motion for summary judgment in a defamation action, the plaintiff must make a sufficient showing of the existence of every element essential to his or her case. See *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265.

■    In matters involving defamation of private persons against the media, such as in the case at bar, Ohio law provides that a plaintiff must first establish that the statements are defamatory and thereafter, must prove actual injury and some degree of fault on the part of the media. *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789.

Appellants set forth several sub-arguments under their sole assignment of error. Appellants maintain that the broadcasts at issue were "of and concerning" appellant, Usha Sethi; that such broadcasts were defamatory to her that the innocent construction rule is not applicable to the statements in question; that such statements were not privileged pursuant to R.C. 2317.05; and, that V.K. Sethi, Neil Sethi and Drs. Sethi, Inc. had viable claims based upon the alleged defamation of appellant Usha Sethi.

Appellants state that the defamation against appellant Usha Sethi had three facets: (1) appellees reported that Lana Stull, a former patient of Sethi and a plaintiff in a pending medical malpractice suit against Sethi, still had two ovaries in place even though Sethi had performed surgery on her and removed the right ovary as confirmed by operative and pathology reports from St. Elizabeth Hospital Medical Center, (2) appellees used Dr. Sethi's treatment of Lana Stull as an example for their report about medical board laxity in disciplining "bad doctors" and in doing so labeled her as an "unfit," "incompetent," "negligent," and "potentially deadly" doctor warranting medical board discipline,and (3) appellees inaccurately reported that Dr. Sethi would not talk to them about the Lana Stull lawsuit. Thus, appellants argue that the trial court erred in granting summary judgment in favor of appellees.

The trial court specifically found that the news broadcast of February 8, 1993 was not "of and concerning" appellant Usha Sethi. However, the trial court did not expressly indicate whether the February 9, 1993 broadcast was "of and concerning" said appellant, choosing instead to address that broadcast in another manner.

Appellants complain that the trial court erred in failing to consider the broadcasts as a series even though appellees' news director, Art Jordan, stated that each broadcast must be viewed in the context of the whole news report.

Appellants submit that although appellant Usha Sethi was not directly named in the broadcast of February 8, 1993, the excerpt from the interview with Lana Stull clearly referred to her.

Appellants argue that the broadcast of February 9, 1993 utilized adjectives such as "unfit," "incompetent," "negligent," and "bad" to describe the type of doctor who appellees claimed was allowed to practice and endanger the public due to medical board laxity. Appellant Usha Sethi was specifically mentioned in this broadcast in relation to a medical malpractice action brought against her by Lana Stull. Appellants maintain that in considering the two segments in the context of the whole news story, there is no question that both broadcasts were "of and concerning" appellant Usha Sethi.

Considering the broadcasts of February 8, 1993 and February 9, 1993 in the context of the whole news story, which is the manner in which appellees concede that they should have been viewed, it is clear that such broadcasts were "of and concerning" appellant Usha Sethi, at least in part. Although Sethi's name was not provided in the first broadcast, the excerpt from the interview with Lana Stull referred to her and she was specifically named in the second broadcast relative to her treatment of Stull. Clearly, the second broadcast was part of the continuing news story which began on February 8, 1993. However, while it may have been error for the trial court to conclude that because the broadcast of February 8, 1993 did not mention Sethi, any statements made therein were not "of and concerning" her, that error was harmless in light of further analysis concerning whether the statements complained of by appellants were defamatory.

Appellants further aver that the news broadcasts in question constituted statements of fact and were defamatory as a matter of law. Appellants urge that when determining whether the statements in the subject broadcasts were constitutionally protected opinion, the totality of the circumstances test as set forth in *Vail*, 72 Ohio St.3d 279, 649 N.E.2d 182 should be applied. Particularly, appellants state that we should consider the specific language at issue, whether the statements were verifiable, the general context of the statements and the broader context in which the statements appeared.

Appellants then engage in a lengthy discussion addressing each prong of the test enunciated in *Vail* in conjunction with the factual scenario presented in this case. However, appellees did not assert the defense of constitutionally protected opinion as a basis for summary judgment and have conceded that the subject broadcasts presented statements of fact. Thus, appellants' discussion is superfluous and we need only determine whether the statements in question were defamatory as to appellant Usha Sethi.

In the February 9, 1993 broadcast, Freeman closed the news story by stating, "Although none of the doctors would talk to us about why both of Mrs. Stull's ovaries are still in place today, they might have to talk in court because Mrs. Stull has filed malpractice suits against both of them." Appellants submit that this statement portrayed appellant Usha Sethi, as a physician guilty of medical malpractice when it was reported that she performed a surgery to remove Stull's ovary.

Appellants state that the plain import of the language contained within the broadcasts in question constituted defamatory statements as applied to appellant Usha Sethi, particularly when viewed in the context of the broadcasts as a whole and in light of the use of Sethi as an example of State Medical Board laxity in disciplining medical negligence. Appellants believe that a reasonable viewer of the broadcasts would understand that all adjectives used by appellees in describing doctors deserving of medical board discipline also applied to Sethi. Therefore, appellants contend that the subject broadcasts were presented by appellees in such a manner as to provide a reasonable viewer with the understanding that Usha Sethi was an unfit, incompetent, potentially deadly, and negligent doctor whom the Medical Board should have disciplined.

■ Although the statement made by Lana Stull in the broadcast of February 8, 1993 indirectly referred to Usha Sethi, that statement was not defamatory to her as it was true or substantially true. Sethi admitted in her deposition that Stull's statements on February 8, 1993, which indicated she had filed a complaint with the State Medical Board and that the board had made no finding of wrongdoing on Sethi's part, were both true. In fact, Dr. Sethi stated that the only statement that she could claim referred to her on February 8, 1993 was in actuality, favorable to her.

■ With regard to the broadcast of February 9, 1993, it is clear that none of the adjectives complained of by appellants were utilized to describe or otherwise directly refer to Usha Sethi. Therefore, any alleged defamation of Sethi must be a matter of interpretation, rather than by direct statement.

The Ohio Supreme Court in *Ed Schory & Sons, Inc. v. Soc. Natl. Bank* (1996), 75 Ohio St.3d 433, 445, 662 N.E.2d 1074,1083, pronounced:

"In Ohio, truth is a complete defense to a claim for defamation. R.C. 2739.02 states: 'In an action for a libel or a slander, the defendant may allege and prove the truth of the matter charged as defamatory. *Proof of the truth thereof shall be considered a complete defense.*' "

Both broadcasts in question described the results of the Public Citizen report, which found that many negligent, unfit and incompetent doctors go unpunished by state medical boards. The broadcast of February 8, 1993 indicated that very

"few disciplinary actions were taken against area doctors; just seven." This broadcast focused primarily on the report issued by Public Citizen and on Freeman's attempt to speak with Dr. Garg, a local member of the Ohio State Medical Board, regarding disciplinary procedures. The only portion of this broadcast which concerned Usha Sethi was the excerpt from an interview with Lana Stull and as Dr. Sethi herself admitted, the statements made in that excerpt were true and were favorable to her. Thus, any statements made in the February 8, 1993 broadcast were not defamatory.

In the broadcast of February 9, 1993, Freeman utilized the adjectives complained of by appellants in again referring to the report issued by Public Citizen and never used such adjectives in speaking about Usha Sethi. Therefore, it cannot be said that a reasonable viewer would have understood the words "unfit," "incompetent," "negligent," and "potentially deadly" to describe Usha Sethi, particularly in light of the context in which they were utilized. The remainder of this broadcast addressed the medical treatment that Stull received from both Usha Sethi and Simon, and Stull's resulting medical malpractice claims against these doctors. Sethi herself admitted that the broadcast accurately reflected the basis of Stull's malpractice claim against her. Thus, any statements made concerning Usha Sethi in the broadcast of February 9, 1993 were true or substantially true and were not defamatory.

Appellants further assert that the innocent-construction rule does not apply to this case as the totality of circumstances test set forth in *Vail*, 72 Ohio St.3d 279, 649 N.E.2d 182, by the Ohio Supreme Court is the applicable law. Appellants state that by adopting the totality of circumstances test in *Vail*, the Ohio Supreme Court implicitly rejected the innocent construction rule. Nonetheless, appellants contend that even if the broadcasts in question are scrutinized under the innocent construction rule, the statements made therein were defamatory as a matter of law as they were not susceptible to two meanings.

The Ohio Supreme Court in *Vail* utilized the totality of the circumstances test to determine whether a statement is one of fact or opinion. In discussing the totality-of-the-circumstances test, the Ohio Supreme Court in *Vail* referred to its previous decision in *Scott v. News–Herald* (1986), 25 Ohio St.3d 243, 25 OBR 302, 496 N.E.2d 699 and stated at 282, 649 N.E.2d at 185:

"This analysis is not a bright-line test, but does establish parameters within which each statement or utterance may stand on its own merits rather than be subjected to a mechanistic standard. As Justice Locher, writing for the court, cautioned in *Scott*, 'the totality of the circumstances test * * * can only be used as a compass to show general direction and not a map to set rigid boundaries.' Id. [25 Ohio St.3d at 250, 25 OBR at 308, 496 N.E.2d at 706.]"

■ In offering the foregoing discussion, the Ohio Supreme Court did not overrule the innocent construction rule as suggested by appellants, but rather, adopted a test by which to distinguish between statements of fact and those of opinion. We have previously stated that no such determination between statements of fact and those of opinion need be made in this case as appellees have conceded that all statements at issue constituted statements of fact. Therefore, the innocent-construction rule may be utilized to ascertain whether a statement of fact is defamatory.

■ The "innocent construction" rule provides that if a statement is "susceptible to two meanings, one defamatory and one innocent, the defamatory meaning should be rejected, and the innocent meaning adopted." *Yeager v. Local Union 20 Teamsters* (1983), 6 Ohio St.3d 369, 372, 6 OBR 421, 423, 453 N.E.2d 666, 669.

■ The statements made during the broadcasts in question could be interpreted to indicate that any conclusion concerning Sethi's treatment of Lana Stull must await the outcome of Stull's pending medical malpractice action, which decision would ultimately be made by a court of law. Furthermore, those statements could be construed as general cautions to the viewing audience regarding their own doctors.

■ Thus, as the statements complained of by appellants are subject to an innocent rather than a defamatory meaning, the innocent-construction rule must apply to remove any basis for a defamation action by appellants. Additionally, any complaint that appellants might have concerning the statement indicating that Sethi was unavailable to comment would likewise fail under the innocent-construction rule as that statement could also be interpreted as meaning that Sethi was unable to comment for valid reasons.

■ Appellants also aver that the statements at issue were not privileged under R.C. 2317.05, which provides:

"The publication of a fair and impartial report of the * * * filing of any affidavit, pleading, or other document in any criminal or civil cause in any court of competent jurisdiction, or of a fair and impartial report of the contents thereof, is privileged, unless it is proved that the same was published maliciously * * *."

■ In order to avail himself of the privileges under R.C. 2317.05, the party asserting the privilege must demonstrate that "the publication is a substantially accurate report of the official record." *Oney v. Allen* (1988), 39 Ohio St.3d 103, 529 N.E.2d 471, paragraph two of the syllabus. The Ohio Supreme Court in *Oney* further stated at paragraph three of its syllabus:

"A publication is substantially accurate if it conveys the essence of the official record to the ordinary reader, without misleading the reader by the inclusion of

inaccurate extra-record information or the exclusion of relevant information in the record."

To be impartial, a publication cannot be biased and must not give the impression that the broadcaster agrees or disagrees with the assertions in the official record of proceedings. *Id.* at 105–106, 529 N.E.2d 471, 472–474. Appellants state that the broadcasts were not merely reports on a lawsuit as they included extra-record information concerning medical board laxity in disciplining bad doctors. Appellants additionally state that the broadcasts inaccurately reported that both of Stull's ovaries "are still in place today," which misled the average viewer to believe that appellant Usha Sethi had failed to remove Stull's ovary.

Appellants continue that the statements made in the broadcasts were not impartial and led the average viewer to believe that appellees agreed with the assertions made by Stull. Appellants allege that appellees failed to report that Usha Sethi filed an answer in the medical malpractice action initiated by Stull, wherein she admitted that she performed a surgery which excised Stull's right ovary and fallopian tube, but denied all other allegations. Appellants also complain that appellees improperly reported that Usha Sethi would not speak with them as they were aware of the fact that Sethi had been advised by legal counsel not to discuss the news story with Freeman.

Appellants aver that the discrepancies between the record of judicial proceedings and the statements made during the broadcasts in question represent substantial inaccuracies that negate the application of R.C. 2317.05. Appellants further maintain that appellees acted with actual malice, thereby precluding the application of R.C. 2317.05, as the statements complained of were made with knowledge that they were false or with reckless disregard as to truth or falsity. See *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 573 N.E.2d 609.

Appellants submit that actual malice on the part of appellees in this case is evident as appellees made the conclusion that Stull still had her ovaries in place. Appellants point out that appellees had no training of any type for its reporters concerning the gathering of facts or reporting of news, had no written or oral procedures or guidelines, obtained no medical consultation in an attempt to resolve the discrepancy in medical records, and did not speak with the pathologist, radiologist, or surgeon who assisted in Stull's surgery.

In *Dinkel v. Lincoln Publishing, Inc.* (1994), 93 Ohio App.3d 344, 347, 638 N.E.2d 611, 613–614, the court held that the privilege afforded by R.C. 2317.05 was an appropriate basis for an entry of summary judgment where the publication in question was a fair and impartial report of court records, stating:

"Plaintiff cannot defeat summary judgment by raising purported *minor discrepancies* between the news reports and the official information. A news report is considered a substantially accurate account of official government information or of a government report if the 'gist' or the 'sting' of the allegedly defamatory aspects of the news report, taken as a whole, accurately reflects the substance of the judicial proceedings or other information obtained from official sources. Errors as to secondary facts, that is, facts which do not change the import of the story or substantially alter the substance of the allegedly defamatory (but protected) aspect of the story, are not actionable."

The gist of Stull's malpractice complaint against Sethi was that Sethi had told her that she removed Stull's right ovary, while ultrasound tests subsequently performed indicated that the right ovary was still in place. The medical records attached to Stull's malpractice complaint confirmed the removal of a right ovary and right fallopian tube, but additionally indicated that at a date subsequent to such surgery, both ovaries were intact. Appellees accurately pointed to both medical reports.

R.C. 2317.05 does not require a verbatim reproduction of a court record. Further, Sethi admitted during her deposition that the broadcasts in question accurately reflected the gist of Stull's malpractice action. Thus, the broadcasts in question were privileged under R.C. 2317.05.

Appellants cannot overcome the privilege afforded by R.C. 2317.05 without establishing that appellees aired the subject broadcasts solely out of hatred or ill will toward Sethi, thereby evidencing malice. Appellants produced no evidence to establish malice and therefore, the trial court properly concluded that appellees were entitled to summary judgment pursuant to R.C. 2317.05.

In consideration of the fact that appellees identified the findings of medical documentation attached to Stull's medical malpractice claim against Usha Sethi, it cannot be said the broadcasts in question inaccurately reported that both of Stull's ovaries "are still in place today." Additionally, appellants have taken the phrase, which they complain misled the viewing audience to believe that Sethi failed to remove Stull's ovary, out of context. In closing his story, Freeman noted that "[a]lthough none of the doctors would talk to us about why both of Mrs. Stull's ovaries are still in place today, they might have to talk in court because Mrs. Stull has filed malpractice suits against both of them."

In applying the innocent-construction rule as previously discussed, such statement could be construed to mean that although both of Stull's doctors declined or were unavailable to be interviewed to offer an explanation as to why the medical documentation presented conflicting findings concerning Stull's ovaries, they might have to explain such conflicts in court. Freeman was not making a

conclusion as to whether he agreed or disagreed with the assertions made by Stull, but rather, was making closing remarks which reminded the viewing audience of the conflicting findings in Stull's medical documentation and of the pending lawsuits against both Sethi and Simon.

Further, the fact that appellees did not report to the viewing audience that Sethi filed an answer to Stull's medical malpractice claim, did not result in an exclusion of relevant information contained in the record. Likewise, the inclusion of information regarding the report issued by Public Citizen did not constitute *inaccurate* extra-record information and did not alter the import of the story or substantially alter the substance of the alleged defamatory aspect of the story. Thus, the broadcasts in question presented a substantially accurate report of an official report and the statements made in such broadcasts were thereby privileged pursuant to R.C. 2317.05.

In *Bruss, supra,* this court cited to *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, in holding that material falsity is an essential element of defamation. We also held that in defending against a defamation action, it is sufficient for the defendant to show that the statement in question was substantially true. *Bruss,* 109 Ohio App.3d at 400, 672 N.E.2d at 240; see also, *National Medic Services Corp. v. E.W. Scripps Co.* (1989), 61 Ohio App.3d 752, 573 N.E.2d 1148.

The trial court found the statement that Usha Sethi was unavailable to comment to be substantially true. We agree. Sethi acknowledges that she was advised by legal counsel not to speak with Freeman concerning the medical issue involving Stull. Sethi likewise acknowledges that the statement in question concerning her unavailability was true and that appellees again contacted her office on February 9, 1993 when she was, in fact, unavailable to comment. The broadcasts at issue depict efforts by Freeman to contact not only Sethi but also, Garg and Simon. It is uncontroverted that Garg and Simon would not speak to Freeman. Freeman accurately reported on February 9, 1993 that Sethi was unavailable to speak to him and therefore the statement "[a]lthough none of the doctors would talk to us * * *" was substantially true as it applied to Usha Sethi.

Furthermore, appellees afforded Sethi the opportunity to be interviewed prior to broadcast in an effort to enable her to tell her side of the story and supply any additional information. However, the interview could not be obtained. Appellants' contention regarding the failure to conduct further investigation in this matter and obtain an expert medical review prior to broadcast is without merit as appellees had no such duty.

Finally, appellants remark that the trial court erred in granting summary judgment against appellants V.K. Sethi, Neil Sethi and Drs. Sethi, Inc. as

each such appellant had a viable claim pursuant to dictates of *Embers Supper Club, Inc. v. Scripps–Howard Broadcasting Co.* (1984), 9 Ohio St.3d 22, 9 OBR 115, 457 N.E.2d 1164.

V.K. Sethi, Neil Sethi and Drs. Sethi, Inc. have not alleged that appellees made defamatory statements about them in the broadcasts at issue. These appellants instead claim to have suffered damages as a result of the alleged defamatory statements made about Usha Sethi, thereby making their claims derivative.

A plaintiff in a defamation action must not only prove that a statement is defamatory, but also that he or she is the individual about whom the statement was made. A plaintiff cannot recover damages by establishing that another person has been defamed. See *Dinkel, supra,* 93 Ohio App.3d 344, 638 N.E.2d 611. Appellants' reliance upon *Embers Supper Club* is misplaced. In *Embers,* the Ohio Supreme Court upheld the right of a corporation to seek damages for defamation to the corporation itself. That case did not stand for the proposition that a corporation may recover damages arising from the defamation of another person or entity as appellants would seem to suggest. Appellants V.K. Sethi, Neil Sethi and Drs. Sethi, Inc. have no viable claim for damages pursuant to any alleged defamatory statement made about appellant Usha Sethi.

Appellants did not establish that the statements in question were defamatory as to Usha Sethi and did not make a sufficient showing of the existence of every element essential to their case. Reasonable minds could only conclude in this case that the statements of fact made in the broadcasts at issue were true or substantially true and therefore were not defamatory, were privileged pursuant to R.C. 2317.05, and were subject to the innocent-construction rule.

This writer can completely sympathize with the doctor's outrage over these broadcasts. A professional's reputation is established over the years by hard work, sacrifice, and dedication. Then one dissatisfied patient, by airing a grievance through the public media, puts a stain on that reputation. This is personally very distasteful.

The balance, however, is that we must have a free and unfettered public media. The "60 Minutes" style of journalism does bring to the public a general issue of great import. This spotlight on abuse can and, in many instances, does bring about positive changes.

The law and the courts are charged with the duty of balancing between these conflicting interests. In this case, the balance falls to the media. Therefore, the trial court did not err in granting summary judgment in favor of appellees, WFMJ Television, Inc., et al.

Appellants' sole assignment of error on appeal is found to be without merit. The judgment of the trial court is affirmed.

*Judgment affirmed.*

GENE DONOFRIO, J., concurs.

VUKOVICH, J., dissents.

VUKOVICH, Judge, dissenting.

I must respectfully dissent from the majority opinion due to a differing view as to the applicability of the totality-of-the-circumstances test as set forth in *Vail v. The Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 649 N.E.2d 182. As the majority opinion indicates, appellants provide a lengthy discussion of the applicability of that test to the case at bar in an attempt to establish that the broadcast as a whole was defamatory in nature. However, the majority discounts this position in that it concludes that the test as set forth in *Vail* should apply only to determine whether the broadcast at issue is considered a statement of fact or constitutionally protected opinion. Since appellees never alleged that the broadcast was constitutionally protected opinion, the majority holds that the totality-of-the-circumstances test is wholly inapplicable to the present case. However, I would take a different approach to this matter.

The totality-of-the-circumstances test should not be limited to determining whether the language at issue constitutes a statement of fact rather than constitutionally protected opinion. On the contrary, the test also should be held to apply in deciding whether the language is defamatory in nature once it has been determined not to be constitutionally protected opinion. This position certainly is not unprecedented in the arena of judicial reasoning.

For instance, both the First and Eighth Appellate Districts have recognized the concept that the circumstances and context in which a statement was made should be considered in determining whether the statement is defamatory. In *Belinky v. Drake Ctr., Inc.* (1996), 117 Ohio App.3d 497, 690 N.E.2d 1302, the First District held that "the court must look to the totality of the circumstances *in determining whether a statement is defamatory as a matter of law.*" (Emphasis added.) *Id.* at 507, 690 N.E.2d at 1309. The Eighth District expanded upon this idea when it held that "[t]he statements at issue should be read in context of the entire article in determining whether a reader would interpret them as defamatory." *Mendise v. Plain Dealer Publishing Co.* (1990), 69 Ohio App.3d 721, 726, 591 N.E.2d 789 citing *Shallenberger v. Scripps Publishing Co.* (C.P.1909), 20 Ohio Dec. 651, 1909 WL 720, affirmed (1912), 85 Ohio St. 492, 98 N.E. 1132.

The Ninth District reached a similar conclusion when it decided *Vogel v. Sekulich* (Sept. 15, 1993), Summit App. No. 16105, unreported, 1993 WL 347096. In relying upon *Mendise* and *Shallenberger,* the court concluded that a court must review the totality of the circumstances and evaluate the "composition and placement of the statement within the entire context of the article." *Id.* at 4. . Furthermore, in citing *Connaughton v. Harte Hanks Communications, Inc.* (C.A.6, 1988), 842 F.2d 825, affirmed (1989), 491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed.2d 562, the court held that an alleged defamatory statement "should not be considered in isolation, but rather within the context of the entire article and the thoughts that the article through its structural implications and connotations is calculated to convey to the reader to whom it is addressed." *Id.* at 840.

This judge's review of *Connaughton* finds the reasoning therein quite persuasive as related to applying the totality-of-the-circumstances test to the determination of whether a statement is defamatory. As is reasoned by the Sixth Circuit Court of Appeals, a statement claimed to be defamatory must be construed in the sense in which the reader to whom it is addressed would ordinarily understand it. *Id.* at 840, citing *Washington Post Co. v. Chaloner* (1919), 250 U.S. 290, 293, 39 S.Ct. 448, 448–449, 63 L.Ed. 987, 989. In order to truly determine whether a statement is defamatory, one must judge not only the plain text but also the composition of the story, its syntax, context, etc. *Id.*

Finally, while not binding upon this court, *Mucci v. Dayton Newspapers, Inc.* (C.P.1995), 71 Ohio Misc.2d 71, 654 N.E.2d 1068, serves to shed further light on this subject. In *Mucci,* a series of articles were published by Dayton Newspapers, Inc. which allegedly imputed a "general want of professional skill and/or knowledge" on the part of Dr. Thomas J. Mucci. Due to the perceived defamatory nature of the statements contained therein, a suit was filed against the newspaper.

In its decision regarding the newspaper's motion for summary judgment, the trial court indicated that while the facts themselves which were contained in the articles were not defamatory, the facts as they were presented under the totality of the circumstances could be viewed as defamatory in nature. *Id.* at 76–77, 654 N.E.2d at 1072–1073. In arriving at this conclusion, the court determined that the totality-of-the-circumstances test should also apply in deciding whether statements were defamatory in that a court must hold as a matter of law whether an alleged defamatory statement is actionable. *Id.* Situations may arise where, while not defamatory in and of themselves, the "synergistic effect" of the statement gives rise to actionable defamation. *Id.* The court went on to provide that although truth is a defense to a defamation action, the truth must relate to the entire published report in light of the context of the statement. *Id.* Although. this case is not binding on this court, it is nonetheless persuasive.

It is also worth noting that jurisdictions outside the state of Ohio have found this concept to have merit and to be applicable to cases involving television broadcasts. In *Weinstein v. Bullick* (E.D.Pa.1993), 827 F.Supp. 1193, it was held that allegedly defamatory statements must be reviewed in the context of the entire broadcast. *Id.*, citing *Pierce v. Capital Cities Communications, Inc.* (C.A.3, 1978), 576 F.2d 495, 502; Restatement of the Law 2d, Torts (1977), Section 563, Comment *d.*

In applying this test to the case at bar, the trial judge should have determined that summary judgment was precluded. Although the majority indicates that comments regarding doctors being "unfit," "incompetent," "negligent," and "potentially deadly" did not directly refer to appellant, these statements should be taken in the context of the broadcast as a whole. After all, appellees concede that the broadcast should not be interpreted as two separate segments but rather in its entirety. When the statements are viewed in this sense rather than in the sterile, out-of-context environment in which the majority views them, they have defamatory connotations as to appellant's fitness to practice medicine. Since the two segments must be viewed together, a reasonable viewer would likely associate the degrading comments with appellant as she was the only physician in the broadcast whose actual practice of medicine was at issue. In essence, appellees use appellant as an example of the medical board's laxity in disciplining "bad doctors." Appellant's medical practice and the discussion regarding the failure to discipline medical negligence are inseparable.

Furthermore, although the statements relating to the malpractice action filed against appellant may have been true, that should not be held to be a defense. As the court indicated in *Mucci*, truth should relate to the entire broadcast in light of the context of the alleged defamatory statements.

To adopt the position espoused by the trial court as well as the majority herein would serve to shield individuals from liability for conduct which oftentimes should be viewed as defamatory in nature. For instance, under the trial court's approach a television station or newspaper could run a two-part series, the first part of which focused on corruption in the practice of law. In referring to the first part of the series, the station or newspaper could then single out an individual attorney in the second segment and discuss matters not directly related to any type of corrupt activity. So long as all statements when viewed individually were true, the attorney would be without a remedy regardless of the effect the statements had on the reasonable viewer. Such a result should not be encouraged or tolerated in our judicial system.

In conclusion, applying the totality of the circumstances test to the determination of whether a statement is in fact defamatory advances the policy behind permitting actions for defamation. The context in which a statement is made

should be a consideration as it provides insight into what a reader, or in this case a listener, reasonably would perceive from the article or broadcast. Taking the statements out of the environment in which they were made necessarily alters the effect they have upon the individual reviewing them. Whenever such a statement is examined in a vacuum, the impact it has will be lessened to the detriment of the plaintiff.

For the foregoing reasons, I respectfully dissent from the majority opinion.