OPINION
{¶ 1} Plaintiff-appellant, Timothy Heidel, appeals the decision of the Warren County Court of Common Pleas granting summary judgment to defendants-appellees, Greg and Deborah Amburgy, in a defamation action. We affirm the decision of the trial court.
 {¶ 2} On July 6, 2001, appellant directed his attorney to send a letter to his neighbors, Kendall and Kathryn Hart, instructing them to prepare for "possible litigation." The letter states that appellant "is prepared to file a lawsuit against you unless your property is restored to a condition and appearance satisfactory to him."
 {¶ 3} Appellant argues that the peaceful and quiet use of his property was disturbed by the Harts' children playing with the basketball hoop and "water slide" located in their own yard. Appellant maintains that the placement of the equipment "cause[s] children and others to come onto [his] property."
 {¶ 4} In the "possible litigation" letter, appellant also complained about the Harts' dog, a trampoline in the Harts' yard, a wooden deck the Harts were building on their property, and their mailbox.[1] Appellant warns that he will obtain "a restraining order against the Harts preventing them from taking any further actions/ inactions which impede [his] legal rights to a peaceful and quiet use of his property."
 {¶ 5} Kathryn Hart showed the "possible litigation" letter to her neighbors, appellees, Greg and Deborah Amburgy. Appellees were concerned that appellant might construe his "possible litigation" as a "defense of the rules of the Homeowner's Association." Since appellant is a Trustee of the Riverwood Trails Homeowner's Association, appellees believed that the Homeowner's Association would be required to "foot the bill to sue and harass [their] own neighbors." This belief was based upon a provision in the deed restrictions requiring indemnification of Homeowner's Association board members and trustees. Therefore, appellees drafted and delivered a letter to everyone in the Riverwood Trails Subdivision calling for an "emergency meeting of the Homeowner's Association for the purpose of considering [appellant's] removal from the Board of Trustees."
 {¶ 6} Appellant contends that the letter appellees circulated to the subdivision residents is defamatory. He maintains that the letter "makes a number of false and damaging allegations" against him. Among the allegations appellant finds defamatory are that he "intimidated children, refused to let any person, pet or plaything touch his property, and that [he] called various county agencies with minor complaints about his neighbors."
 {¶ 7} On October 22, 2001, appellant filed a complaint alleging that appellees published false statements about him in bad faith for no legitimate purpose with malice and reckless disregard for the truth. Appellant maintains that he has suffered harm to his reputation, humiliation and extreme mental and emotional suffering as a result of the defamatory statements. Appellees moved for summary judgment.
 {¶ 8} On August 14, 2002, the trial court granted summary judgment to appellees. The trial court found that appellees' letter conveyed an "expression of the [appellees'] beliefs," and "clearly convey[ed] the subjective views of [appellees]." The trial court held that the letter, as appellees' opinion, was protected under the Ohio Constitution. Appellant appeals the decision raising three assignments of error.
Assignment of Error No. 1
 {¶ 9} "THE TRIAL COURT ERRED BY FINDING THAT STATEMENTS OF DEFENDANTS/APPELLEES GREG AND DEBORAH AMBURGY CONSTITUTED CONSTITUTIONALLY-PROTECTED OPINION."
 {¶ 10} Appellant argues that the letter distributed by appellees to the residents of Riverwood Trails Subdivision made defamatory statements of fact by stating that he intimidated the neighborhood children, allowed no person, pet, or plaything on his property, and that he called various county agencies to make complaints about his neighbors. Appellant maintains the terms appellees used are not vague, the statements are verifiable, and the general and broad contexts of the statements have the tenor of factual reporting. Therefore, appellant argues, the statements are not opinion and are not constitutionally protected.
 {¶ 11} Summary judgment is appropriate in defamation actions because the determination of whether words are defamatory is a question of law to be decided by the court. Vail v. The Plain Dealer PublishingCo., 72 Ohio St.3d 279, 280, 1995-Ohio-187, certiorari denied (1996),516 U.S. 1043, 116 S.Ct. 700. To survive a motion for summary judgment in a defamation action, the plaintiff must make a sufficient showing of the existence of every element essential to his or her case. See CelotexCorp. v. Catrett (1986), 477 U.S. 317, 322, 106 S.Ct. 2548. An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336. De novo review means that this court "uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial." Brewer v. Cleveland Bd. Of Edn. (1997), 122 Ohio App.3d 378,383, citing Dupler v. Mansfield Journal (1980), 64 Ohio St.2d 116,119-120. In other words, we review the trial court's decision without according it any deference. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711.
 {¶ 12} Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis DayWarehousing Co. (1976), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
 {¶ 13} If the moving party fails to satisfy its initial burden, "the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Dresher v. Burt, 75 Ohio St.3d 280, 293,1996-Ohio-107.
 {¶ 14} Generally, the essential elements of a defamation action, whether slander or libel, are that "the defendant made a false statement, that the false statement was defamatory, that the false defamatory statement was published, that the plaintiff was injured and that the defendant acted with the required degree of fault." Celebrezzev. Dayton Newspapers, Inc. (1988), 41 Ohio App.3d 343, 346-347. Defamatory matter is defined as that which is injurious to another's reputation. Gertz v. Robert Welch, Inc. (1974), 418 U.S. 323, 345-346,94 S.Ct. 2997. In an action for defamation, the plaintiff's prima facie case is made when he has established a publication to a third person for which defendant is responsible, the recipient's understanding of the defamatory meaning, and its actionable character. Hahn v. Kotten (1975),43 Ohio St.2d 237, 243.
 {¶ 15} However, under Ohio law, for a statement to be defamatory it must be a statement of fact and not of opinion. Vail,72 Ohio St.3d at 281, 1995-Ohio-187. Section 11, Article I of the Ohio Constitution provides in relevant part: "[e]very citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press." Whether the allegedly defamatory language is opinion or fact is a question of law for the court to decide. Yeager v.Local Union 20 (1983), 6 Ohio St.3d 369, 372. A "totality of the circumstances" test is used to determine whether a statement is fact or opinion. Vail, 72 Ohio St.3d at 281, 1995-Ohio-187. The four-part test as outlined in Celebrezze, and followed in Vail, is fluid and calls for the court to consider the specific language used, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared. Id.
 {¶ 16} In this case, the paragraphs of the letter that appellant maintains are defamatory are as follows:
 {¶ 17} "Until recently, Mr. Heidel's intimidation of our children and other children in our neighborhood was mostly ignored. Mr. Heidel confiscates balls that roll onto his property and refuses to return them. Everyone in our cul-de-sac, especially the children, have been made aware that Mr. Heidel will allow no person, pet or plaything to touch his property. We agree that he has this right and have instructed our children to not throw a ball in any direction that might roll onto Mr. Heidel's property.
 {¶ 18} "* * *
 {¶ 19} "He has, however, called various agencies in the county government regarding our neighbors * * * [a]nd this week, he initiated legal action, making scurrilous charges against one of our neighbors for what we consider petty violations * * *."
 {¶ 20} Looking at the specific language of the letter, a key consideration is whether the language "lacks precise meaning and would be understood by the ordinary reader for just what it is — one person's attempt to persuade public opinion." Vail,72 Ohio St.3d at 282-83, 1995-Ohio-187. Language that is loosely definable or has variously interpretable meanings will not ordinarily support an action for defamation. Wampler v. Higgins, 93 Ohio St.3d 111, 129,2001-Ohio-1293.
 {¶ 21} Looking at the first sentence of the allegedly defamatory paragraphs, appellant argues that the statement that he intimidates children is defamatory. However, the actions that constitute intimidation of children can and do vary in the minds of persons. Given the imprecise and various interpretations of what intimidation of children refers to, the statements in appellees' letter must be seen as imprecise and necessarily deemed appellees' opinion. See Vail, 72 Ohio St.3d at 283,1995-Ohio-187. Therefore, the statements are subject to protection under the Ohio Constitution.
 {¶ 22} Looking at the second sentence of the allegedly defamatory paragraphs, appellant argues that stating he confiscates balls is defamatory. Greg Amburgy stated in his deposition that his son no longer played catch in the area near appellant's house because he was intimidated as a result of "the ball incident." Greg Amburgy also stated that he brought up the "ball incident" in a conversation with appellant and when he "didn't deny it, I figured it — it had to be true."
 {¶ 23} Appellant confirms the incident in his own deposition. He states that 11-year-old Adam Amburgy and his friend Ben Hartnett play catch in the street, in front of his house. Appellant admits that on an occasion when they were playing catch, "the ball bounced onto my grass, and I picked it up." After appellant picked up the ball, he told Ben Hartnett to "tell your parents I want to talk to them." Appellant claims that he picked up the ball because "Ben Hartnett had taunted [him] and called him names." When asked in deposition if he ever went to the Hartnett house to return the ball, appellant stated, "I felt they should come and talk to me." Truth is a complete defense to a claim for defamation. Sethi v. WFMJ Television, Inc. (1999), 134 Ohio App.3d 796,806, quoting Ed Schory Sons, Inc. v. Soc. Natl. Bank,75 Ohio St.3d 433, 445, 1996-Ohio-194.
 {¶ 24} Looking at the third and fourth sentences of the allegedly defamatory paragraphs, appellant argues that the statements in appellees' letter that he "will allow no person, pet or plaything to touch his property" is defamatory. We have already discussed appellant's confiscation and retention of playthings above, i.e., the "ball incident." In appellant's "possible litigation" letter to the Harts, he complained that their "water slide" and basketball hoop "caused children and others to come onto [his] property." Obviously, having "children and others to come onto [his] property" is something appellant did not tolerate, as he was willing to enter into litigation to prevent the entry onto his property. Furthermore, appellant admits in his deposition that he asked the Harts to "keep pets off [his] property."
 {¶ 25} Nevertheless, based upon appellees' acknowledgment that appellant "has this right," to keep persons, pets or playthings from touching his property, we cannot discern how this statement is injurious to appellant's reputation. Consequently, we find that the statement is not defamatory.
 {¶ 26} Looking at the second allegedly defamatory paragraph, appellant argues that the statement in appellees' letter asserting that he calls various agencies regarding his neighbors is defamatory. However, the paragraph states that appellant calls agencies "for what [appellees'] consider petty offenses." Clearly this is an expression of opinion. Additionally, the letter contains other indications that it is the appellees' opinion. Such indications include the phrases, "our concern is" and "we believe."
 {¶ 27} Based on the totality of the circumstances, we hold that the statements in appellees' letter are non-actionable. The statements are either the truth or statements of opinion and do not rise to the level of defamation. Statements of opinion are protected speech. Furthermore, the truth of a statement is a complete defense to a claim for defamation. Sethi, 134 Ohio App.3d at 806. There are no genuine issues as to any material facts, reasonable minds can come to but one conclusion, and that conclusion is adverse to appellant. Therefore, appellees are entitled to judgment as a matter of law. Consequently, appellant's first assignment of error is overruled.
Assignment of Error No. 2
 {¶ 28} "THE TRIAL COURT ERRED BY FAILING TO FIND THAT STATEMENTS BY THE AMBURGYS WERE DEFAMATORY."
 {¶ 29} Appellant argues that statements made by appellees that he intimidated neighborhood children, that he allowed no person, pet or any plaything on his property, and that he contacted county agencies complaining about his neighbors, "were defamatory per se."
 {¶ 30} Defamation is the unprivileged publication of false and defamatory matter about another. See McCarthy v. Cincinnati Enquirer,Inc. (1956), 101 Ohio App. 297. Defamatory matter is defined as injurious to another's reputation. Gertz, 418 U.S. 323, 345-346, 94 S.Ct. 2997. Defamation per se occurs when material is defamatory on its face, i.e., by the very meaning of the words used. Moore v. P.W. Pub. Co. (1965),3 Ohio St.2d 183, 188; Becker v. Toulmin (1956), 165 Ohio St. 549, 556. In order for a statement to be defamatory per se, it must "consist of words which import an indictable criminal offense involving moral turpitude or infamous punishment, imputes some loathsome or contagious disease which excludes one from society or tends to injure one in his trade or occupation." McCartney v. Oblates of St. Francis deSales
(1992), 80 Ohio App.3d 345, 353.
 {¶ 31} Even in cases where a plaintiff has established a prima facie case of defamation, a defendant may invoke the defense of a privilege. Hahn v. Kotten (1975), 43 Ohio St.2d 237, 243. Where the circumstances of the alleged defamation are not in dispute, the determination of "whether it is libelous per se is for the court to decide." Becker, 165 Ohio St. at 555.
 {¶ 32} In the instant case there is no dispute as to the circumstances under which the allegedly defamatory letter was written or the contents of the letter. However, as discussed in the first assignment of error, the letter conveys an expression of appellees' beliefs or statements of truth. As such it is constitutionally protected. Furthermore, appellees' letter does not allege an indictable criminal offense involving moral turpitude or infamous punishment. The letter does not impute some loathsome or contagious disease which excludes appellant from society. The letter does not injure appellant in his trade or occupation. Therefore, appellees' letter is not defamatory per se, as argued by appellant. Consequently, appellant's second assignment of error is overruled.
Assignment of Error No. 3
 {¶ 33} "THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WHEN THERE WERE GENUINE ISSUES OF MATERIAL FACT THAT COULD ONLY BE RESOLVED AT TRIAL."
 {¶ 34} Appellant argues that the trial court failed to find that there were triable issues of material fact by finding that appellees' statements were protected opinion. Appellant contends that the allegations are false and that they were published with requisite fault or at least negligence.
 {¶ 35} However, the applicability of the state constitution's "opinion privilege" in a given case is a question of law for the court in a defamation action. See Section 11, Article I, Ohio Constitution. We find that, under the four-part Vail test, the trial court was correct in determining that portions of the allegedly defamatory sections of appellees' letter were comprised of their opinions. See Vail,72 Ohio St.3d at 282-83, 1995-Ohio-187. As expressions of appellees' opinions, the letter is nonactionable. See Wampler v. Higgins, 93 Ohio St.3d 111,118, 2001-Ohio-1293. The portions that were not opinion were either the truth or not defamatory, thus also nonactionable. Therefore, no material facts remained to be resolved and no further findings were necessary. Appellees were entitled to summary judgment by law. See id. Consequently, the third assignment of error is overruled.
Judgment affirmed.
WALSH and POWELL, JJ., concur.
[1] Appellant's "possible litigation" letter complained that the Hart's damaged mailbox "was not replaced with the correct/same mailbox as required." However, Greg Amburgy stated in his deposition that the only difference in the Hart's new mailbox was that "the latch was a different color."